UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

Civil Action No. _____

| | |
|---|---|
| LISA TARDIFF,<br>        Plaintiff,<br><br>        v.<br><br>LABORERS INTERNATIONAL UNION OF NORTH AMERICA LOCAL UNION 609, CHRISTOPHER MURPHY, and WENDALL GARDNER,<br><br>        Respondents. | **COMPLAINT AND JURY DEMAND** |

## PARTIES

1. Plaintiff, Lisa Tariff, is a female individual who resides in Webster, Massachusetts.

2. Defendant, Laborers International Union of North America, Massachusetts Local Union 609 is labor organization and an employer located at 3 Pierce Street in Framingham, Massachusetts, operates a hiring hall, and it is a Local Union affiliate of the Laborers International Union of North America ("Local 609").

3. Defendant, Christopher Murphy is employed by Local 609 as the Business Manager, Secretary, and Treasurer. Upon information and belief, Mr. Murphy resides in Franklin, Massachusetts.

4. Defendant, Wendall Gardner is employed by Local 609 as its President and a Field Representative. Upon information and belief, Mr. Gardner resides in Woonsocket, Rhode Island.

## JURISDICTION

5. The Court has jurisdiction over the claims set forth herein, pursuant to 28 U.S.C. §§ 1331 and 1332 and otherwise. There are federal questions of law and the amount in controversy is in excess of $75,000.

6. On or about March 1, 2022, Ms. Tardiff filed a Charge of Discrimination with the Massachusetts Commission Against Discrimination against Defendants for their violations of Plaintiff's rights under the state and federal anti-discrimination and retaliation laws.

7. The Charge of Discrimination was filed jointly with the U.S. Equal Employment Opportunity Commission.

8. Ms. Tardiff received a right to sue letter from the MCAD and EEOC and has brought this action within 90 days of receipt of such letters.

## FACTS

9. Local 609 hired Ms. Tardiff as an Office Manager on October 22, 2003. Ms. Tardiff has remained continuously employed by Local 609 in such capacity and, thorough her tenure, she has been a dedicated and stellar employee.

10. Upon information and belief, Mr. Murphy is the current Business Manager of the Local 609. As the Business Manager, Mr. Murphy had supervisory authority over Ms. Tardiff since the commencement of her employment with Local 609.

11. Upon information and belief, Mr. Gardner is the current President of Local 609. Mr. Gardner had supervisory authority over Ms. Tardiff since at least January 1, 2021.

12.     Mr. Gardner is Mr. Murphy's son-in-law.

**Sexual Assault**

13.     On May 19, 2021 at approximately 2:30 p.m., Ms. Tardiff and Mr. Gardner were the only two individuals in Local 609's office building.

14.     Ms. Tardiff was eating lunch in a corner of the office kitchen when Mr. Gardner approached her naked, with the exception of a bath towel loosely draped across his waist.

15.     Ms. Tariff raised her hands to block her face and asked Mr. Gardner to put clothes on.  Mr. Gardner released the towel he was holding and exposed his erect penis to Ms. Tardiff.

16.     Ms. Tardiff forcefully exited the kitchen and escaped to her private office where she closed the door and suffered from the physical manifestations of shock and panic.

17.     Ms. Tardiff texted Mr. Murphy regarding the incident and reported that Mr. Gardner "exposed himself" to her after he approached her in a "towel naked underneath and then drop[ped] [the] towel."  Mr. Murphy responded to Ms. Tardiff's text message and stated to her: "I trust you more than anything."

18.     Meanwhile, Mr. Gardner texted Ms. Tardiff and apologized for the sexual assault. He specifically stated to her: "Love always Lisa I hate letting you down or making you dread being on our team."

19.     The May 19, 2021 incident was the culmination of Mr. Gardner's increasing unwelcome conduct toward Ms. Tardiff, as Mr. Gardner had recently started approaching Ms. Tardiff wearing fewer and fewer articles of clothing that are inappropriate for an office environment.

20.     In retrospect, Ms. Tardiff believes she was being groomed by Mr. Gardner.

21. Mr. Murphy attempted to require Ms. Tardiff to continue to work in the office building alone with Mr. Gardner. Fearing her physical safety, Ms. Tardiff refused.

### Retaliation

22. On June 16, 2021, Ms. Tardiff filed an internal complaint regarding the above-described conduct.

23. Thereafter, Ms. Tardiff was informed that Local 609 had engaged an "independent investigator," Jocelyn Jones of the law firm Segal Roitman, to investigate Mr. Gardner's sexual assault and Ms. Tardiff's complaint.

24. Ms. Tardiff cooperated with the interviews by the "independent investigator" and submitted an additional written statement regarding the gender discrimination she suffered (as described below).

25. In June 2021, Local 609 placed Ms. Tardiff on an indefinite, paid administrative leave.

26. Between June 2021 and December 2021, Ms. Tardiff regularly requested updates from Local 609 regarding the status of the investigation. Local 609 either failed to respond and/or stated that the investigation was ongoing in response to each inquiry.

27. As of December 20, 2021, Local 609 and/or the "independent investigator" had not completed the investigation into Ms. Tardiff's complaint of sexual assault made in June 2021.

28. On or about December 20, 2021, Ms. Tardiff filed criminal charges against Mr. Gardner with the Framingham, Massachusetts police department.

29. Upon learning of the criminal charges, Local 609 ceased paying Ms. Tardiff while she was on paid administrative leave. Ms. Tardiff complained of the missing pay (i.e.,

retaliation) on January 6, 2022.  Thereafter, another week of pay was skipped by Local 609.  Ms. Tardiff complained of the missing pay (i.e., retaliation) on January 10, 2022.  On or about January 11, 2022, Local 609 paid Ms. Tardiff for the two skipped weeks of pay.

30. After the criminal charges were filed, Mr. Gardner alleged that Ms. Tardiff complained about his sexual assault because he is black.  On January 27, 2022, Local 609's "independent investigator" stated that "in the course of evaluating the case, and issues of credibility . . . [and] evaluating whether a racial motive existed" for Ms. Tardiff to complain about Mr. Gardner, she "**did not find there to be a racial motive**" in Ms. Tardiff's complaint about Mr. Gardner.  This constitutes an admission by Defendants that Ms. Tardiff's protected conduct was not racially motivated.

31. On January 28, 2022, in the context of discussing the conclusion that Ms. Tardiff's complaint was not racially motivated, Local 609's "independent investigator" stated that she did not need to speak again with Ms. Tardiff.

32. On or about January 31, 2022, Local 609's "independent investigator" reported that she concluded that Mr. Gardner did not *intentionally* expose his erect penis to Ms. Tardiff when he physically cornered her in the kitchen while they were alone in the office.

33. To Ms. Tardiff's knowledge, the "independent investigator" did not determine *why* Mr. Gardner would corner Ms. Tardiff while wearing only a towel in an office environment.

34. Upon information and belief, the "independent investigator" interviewed Mr. Gardner and took notes of the interview.

35. The "independent investigator" has not shared her investigation report and/or notes of her interview of Mr. Gardner with Ms. Tardiff.

36. On March 1, 2022, Ms. Tardiff filed a Charge of Discrimination with the Massachusetts Commission Against Discrimination.

37. On or about May 9, 2022, Local's 609's "independent investigator" (now acting on behalf of Local 609 as its legal advocate) reported that Local 609 was immediately terminating Ms. Tardiff's paid administrative leave because, in relevant part, "two things happened": (1) Ms. Tardiff "filed a Criminal Complaint against Mr. Gardner for sexual assault (in December 2021); and (2) Ms. Tardiff did not consent to Local 609's request for an indefinite "stay of" the MCAD matter.

38. Local 609's termination of Ms. Tardiff's paid administrative leave constituted retaliation against Ms. Tardiff for engaging in protected activity.

39. Since May 2022, Ms. Tardiff has not received pay or benefits contributions from Local 609.

**Paid Family Medical Leave Act Retaliation**

40. Immediately after her paid administrative leave was wrongfully and illegally terminated, Ms. Tardiff's counsel informed the "independent investigator" that Ms. Tardiff was applying for Massachusetts Paid Family and Medical Leave due to her mental health (anxiety, depression) caused by Defendants.

41. Thereafter, and as evidence of the pretextual reason for terminating her paid administrative leave, Local 609's "independent investigator" indicated – for the *first time* since the sexual assault – that Local 609 now considered that Ms. Tardiff's paid administrative leave was for her mental health. The statement was false, as Ms. Tardiff's paid administrative leave was not for her mental health. Instead, the paid administrative leave was granted so that the "independent investigator" could conduct the investigation.

42. Stating that Ms. Tardiff's paid administrative leave was for her mental health undercuts Defendants' anticipated defense and reasoning that it terminated her paid administrative leave because settlement negotiations stalled.

43. Upon information and belief, Local 609 attempted to interfere with Ms. Tardiff's application for Massachusetts Paid Family Medical Leave.

## Gender Discrimination

44. In addition to the foregoing, Ms. Tardiff has suffered from gender discrimination by Local 609 and Mr. Murphy.

45. Mr. Murphy stunted Ms. Tardiff's career because of his biased beliefs about her capabilities as a woman. For example, Mr. Murphy repeatedly told Ms. Tardiff that "women don't belong in the field" and that a job opportunity would not "work for [her because she is] a girl."

46. In addition, Local 609 and Mr. Murphy discriminated against Ms. Tardiff on the basis of her gender with respect to her union membership and rate of compensation. Specifically, she was not properly compensated as a union member and she was deprived of substantial wages and benefits (including, but not limited to pension contributions) from the date of her hire in October 2003 until Local 609 began to pay Ms. Tardiff a union wage on or about May 31, 2018. Upon information and belief, Local 609 did not prevent any male employees from earning Local 609's union wage.

47. Local 609 and Mr. Murphy's actions with respect to the denial of opportunities, advancement, and membership and the failure to pay Ms. Tardiff equal wages constitutes gender discrimination and Ms. Tardiff has suffered and continues to suffer emotional distress therefrom.

48. In addition to the foregoing, Mr. Murphy repeatedly attempted to intimidate Ms. Tardiff by sending her pictures of him holding a gun with his face covered, by displaying a gun on his desk facing her, and by repeatedly referencing his illegal possession of guns in the workplace. The efforts were designed to intimidate and silence Ms. Tardiff.

49. Upon information and belief, other female employees and/or members of Local 609 have complained of discrimination, harassment, and/or retaliation by Mr. Murphy. Local 609 has knowledge of such complaints, but failed to take corrective against Mr. Murphy would would have prevented his wrongful conduct toward Ms. Tardiff.

## Present Status

50. To date, Local 609 has taken no corrective action against the perpetrator of the sexual assault, Mr. Gardner. Instead, Local 609 continues to publicly praises and commends Mr. Gardner.

51. In addition, Local 609 has taken no corrective action against Mr. Murphy for discriminating against, harassing, and retaliating against Ms. Tardiff and/or other female employees and members.

52. Local 609 has failed to ensure that Ms. Tardiff's work environment is free from harassment, discrimination, assault, and retaliation. Local 609's work environment is physically unsafe for Ms. Tardiff and other female employees and members.

53. Upon information and belief, Ms. Tardiff remains technically employed by Local 609. However, she has not been paid and has not received any benefits of employment or union membership (including health insurance coverage and pension contributions) since May 2021.

54. Defendants' conduct toward Ms. Tardiff has resulted in her constructive discharge from employment with Local 609.

55. Ms. Tardiff has suffered and continues to suffer extreme emotional distress from Mr. Gardner's assault, and Local 609 and Mr. Murphy's failure to adequately respond thereto, and the discrimination and retaliation she has experienced at the hands of all Defendants. Ms. Tardiff's emotional distress rises to the level of a disability under state and federal law.

## CLAIMS

### COUNT I
### Sexual Harassment in Violation of M.G.L. 151B
### All Defendants

56. Ms. Tardiff restates and incorporate by reference the foregoing paragraphs of the Complaint.

57. Section 4 of M.G.L. c. 151B prohibits employers from discriminating against employees in compensation or in the terms, conditions or privileged of employment based on the employee's sex and/or gender identity.

58. Mr. Gardner and Mr. Murphy are supervisors of Plaintiff and, as such, are individually liable.

59. As set forth above, Mr. Gardner sexually assaulted Ms. Tardiff. In so doing, in addition to other conduct, Mr. Gardner created a hostile work environment for, sexually harassed, and discriminated against Ms. Tardiff on the basis of her sex/gender.

60. Local 609 and Mr. Murphy created and/or permitted a hostile work environment for and discriminated against Ms. Tardiff on the basis of her sex/gender. Local 609 and Mr. Murphy failed to take reasonable steps to ensure that the sexual harassment and assault would not continue.

61. Ms. Tardiff was constructively discharged from her employment, at least in part, based upon her reporting of and/or resisting of said sexual harassment.

62. The environment and the conditions imposed upon Ms. Tardiff related to and adversely affected the terms and conditions of her employment.  Ms. Tardiff suffered a hostile work environment.

63. Defendants' unlawful conduct has caused substantial and continuing damage to Ms. Tardiff.

**COUNT II**
**Sexual Harassment in Violation of Title VII of the Civil Rights Act**
**All Defendants**

64. Ms. Tardiff restates and incorporate by reference the foregoing paragraphs of the Complaint.

65. Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., prohibits discrimination in the terms, conditions, and privileges of employment due to sex and/or gender.

66. Mr. Gardner and Mr. Murphy are supervisors of Plaintiff.

67. As set forth above, Mr. Gardner sexually assaulted Ms. Tardiff.  In so doing, in addition to other conduct, Mr. Gardner created a hostile work environment for, sexually harassed, and discriminated against Ms. Tardiff on the basis of her sex/gender.

68. Local 609 and Mr. Murphy created and/or permitted a hostile work environment for and discriminated against Ms. Tardiff on the basis of her sex/gender.  Local 609 and Mr. Murphy failed to take reasonable steps to ensure that the sexual harassment and assault would not continue.

69. Ms. Tardiff was constructively discharged from her employment, at least in part, based upon her reporting of and/or resisting of said sexual harassment.

70. The environment and the conditions imposed upon Ms. Tardiff related to and adversely affected the terms and conditions of her employment. Ms. Tardiff suffered a hostile work environment.

71. Defendants' unlawful conduct has caused substantial and continuing damage to Ms. Tardiff.

**COUNT III**
**Retaliation in Violation of M.G.L. 151B**
**All Defendants**

72. Ms. Tardiff restates and incorporates by reference the foregoing paragraphs of the Complaint.

73. Section 4 of M.G.L. c. 151B prohibits employers from retaliating against employees for their exercise of any rights granted or protected by Chapter 151B.

74. Mr. Gardner and Mr. Murphy are supervisors of Plaintiff and, as such, are individually liable.

75. Ms. Tardiff complained about Mr. Gardner, Mr. Murphy and Local 609's conduct in creating a hostile work environment and discriminating against her on the basis of her sex/gender.

76. Ms. Tardiff filed a criminal complaint against Mr. Gardner for the sexual assault.

77. Defendants were aware of Ms. Tardiff's protected conduct.

78. Defendants retaliated against Plaintiff in violation of M.G.L. c. 151B and Title VII by ceasing her paid administrative leave, interfering with her rights under the PFMLA and FMLA, and constructively discharging her.

79. Defendants' unlawful conduct has caused substantial and continuing damage to Plaintiff.

## COUNT IV
### Retaliation in Violation of Title VII
### All Defendants

80. Ms. Tardiff restates and incorporates by reference the foregoing paragraphs of the Complaint.

81. Title VII prohibits employers from retaliating against employees for engaging in conduct protected by Title VII, including opposing any practice made unlawful by Title VII and/or the employee's participation in an investigation, proceeding, or hearing under Title VII.

82. Mr. Gardner and Mr. Murphy are supervisors of Plaintiff and, as such, are individually liable.

83. Ms. Tardiff complained about Mr. Gardner, Mr. Murphy and Local 609's conduct in creating a hostile work environment and discriminating against her on the basis of her sex/gender.

84. Ms. Tardiff filed a criminal complaint against Mr. Gardner for the sexual assault.

85. Defendants were aware of Ms. Tardiff's protected conduct.

86. Defendants retaliated against Plaintiff in violation of M.G.L. c. 151B and Title VII by ceasing her paid administrative leave, interfering with her rights under the PFMLA and FMLA, and constructively discharging her.

87. Defendants' unlawful conduct has caused substantial and continuing damage to Plaintiff.

## COUNT V
### Assault and Battery
### Defendant Gardner

88. Ms. Tardiff restates and incorporates by reference the foregoing paragraphs of the Complaint.

89. Ms. Tardiff, in the course of her employment with Defendant Local 609, was sexually and physically assaulted in May 2021 by Defendant Gardner, an employee and supervisor of Local 609.

90. As a direct and proximate result of the intentional acts of Defendant Gardner, Ms. Tardiff was the subject of an intentional harmful and offensive act.

91. Defendant Gardner's unlawful conduct has caused substantial and continuing damage to Plaintiff.

## COUNT VI
## Negligent Supervision
## Defendant Local 609

92. Ms. Tardiff restates and incorporates by reference the foregoing paragraphs of the Complaint.

93. Defendant Local 609 knew or should have known that Defendant Murphy had a propensity for offensive conduct toward women.

94. Upon information and belief, Defendant Murphy has engaged in sex/gender discrimination and harassment in the past and Defendant Local 609 failed to act in order to ensure that this conduct did not occur again in the future.

95. Defendant Local 609 knew or should have known that Defendant Gardner had a propensity for offensive conduct toward women.

96. Upon information and belief, Defendant Gardner has engaged in sex/gender discrimination and harassment in the past and Defendant Local 609 failed to act in order to ensure that this conduct did not occur again in the future.

97. Defendant Local 609 had a duty of care to Plaintiff as an employee.

98. Defendant Local 609 breached said duty of care to Plaintiff.

99. Defendant Local 609's unlawful conduct has caused substantial and continuing damage to Plaintiff.

**COUNT VII**
**Intentional/Negligent Infliction of Emotional Distress**
**Defendants Gardner and Murphy**

100. Ms. Tardiff restates and incorporates by reference the foregoing paragraphs of the Complaint.

101. The conduct of Mr. Gardner and Mr. Murphy toward Ms. Tardiff was extreme in degree and outrageous in character, resulting in the intentional and reckless infliction of emotional distress upon Ms. Tardiff.

102. Defendants intended to inflict emotional distress on Ms. Tardiff or knew or should have known that emotional distress was a likely result of their conduct.

103. Defendants' conduct as alleged above was extreme and outrageous, beyond all possible bounds of decency and was utterly intolerable.

104. The outrageous actions of Defendants were the cause of Ms. Tardiff's distress and the emotional distress sustained by Ms. Tardiff is of a nature that no reasonable person could be expected to endure.

105. Defendants' unlawful conduct has caused substantial and continuing damage to Ms. Tardiff.

## COUNT VIII
### Intentional/Negligent Infliction of Emotional Distress
### <u>Defendant Local 609</u>

106. Ms. Tardiff restates and incorporates by reference the foregoing paragraphs of the Complaint.

107. Ms. Tardiff was subject to severe and pervasive sexual harassment and sex/gender discrimination that alerted the conditions of working environment to create a hostile, offensive and intimidating work environment.

108. Ms. Tardiff complained about the harassment and discrimination to Defendant Local 609 but it failed to take prompt and appropriate remedial action to halt it.

109. As a direct and proximate result of the harassment and discrimination she suffered at work, Ms. Tardiff developed a psychiatric disability.

110. Local 609's creation of a hostile work environment and failure to take prompt and remedial action to halt the harassment and discrimination caused, continues to cause, and will cause Ms. Tardiff to suffer substantial damages for pecuniary losses, mental anguish, severe emotional distress, loss of enjoyment of life, and other non-pecuniary losses.

111. Local 609's agent-employees engaged in negligent and/or extreme and outrageous conduct and their conduct was the foreseeable cause of Ms. Tardiff's monetary, bodily, and emotional injuries.

## COUNT IX
### Gender Discrimination in Violation of Chapter 151B
### <u>All Defendants</u>

112. Ms. Tardiff restates and incorporates by reference the foregoing paragraphs of the Complaint.

113. Ms. Tardiff is a female and was one of the only few female employees of Local 609.

114. Ms. Tardiff was subject to different terms, conditions, and privileges of employment due to her gender, including but not limited to, differences in pay and benefits and career opportunities.

115. Local 609's discriminatory treatment of Ms. Tardiff constitutes a violation of Title VII and M.G.L. c. 151B, which prohibit discrimination in employment due to gender.

116. In subjecting Ms. Tardiff to discriminatory working conditions, Local 609 acted with malice or with reckless indifference to the federally protected rights of Ms. Tardiff.

117. Defendants' unlawful conduct has caused substantial and continuing damage to Ms. Tardiff.

## COUNT X
### Gender Discrimination in Violation of Title VII
### All Defendants

118. Ms. Tardiff restates and incorporates by reference the foregoing paragraphs of the Complaint.

119. Ms. Tardiff is a female and was one of the only few female employees of Local 609.

120. Ms. Tardiff was subject to different terms, conditions, and privileges of employment due to her gender, including but not limited to, differences in pay and benefits and career opportunities.

121. Local 609's discriminatory treatment of Ms. Tardiff constitutes a violation of Title VII, which prohibits discrimination in employment due to gender.

122. In subjecting Ms. Tardiff to discriminatory working conditions, Local 609 acted with malice or with reckless indifference to the federally protected rights of Ms. Tardiff.

123. Defendants' unlawful conduct has caused substantial and continuing damage to Ms. Tardiff.

**COUNT XII**
**Interference with Ms. Tardiff's Rights Under the Massachusetts Paid Family Medical Leave Act**
**All Defendants**

124. Ms. Tardiff restates and incorporates by reference the foregoing paragraphs of the Complaint.

125. The Paid Family Medical Leave Act ("PFMLA") makes it unlawful for an employer to threaten to retaliate or to retaliate against an employee for exercising any right to which such employee is entitled under the PFMLA.

126. The PFMLA makes it unlawful for an employer to interfere with an employee's exercise of any right to which such employee is entitled under the PFMLA.

127. Upon learning that Ms. Tardiff filed an application for Massachusetts Paid Family Medical Leave, Defendants threatened her and retaliated against her.

128. In addition, upon information and belief, Defendants attempted to interfere with Ms. Tardiff's application for PFMLA benefits by wrongfully indicating to the Department that Ms. Tardiff had previously been on a medical leave.

129. Defendants' unlawful conduct has caused substantial and continuing damage to Ms. Tardiff.

**WHEREFORE**, Plaintiff, Lisa Tardiff respectfully prays that this Court:

1. Enter judgment in her favor on all counts of this Complaint;

2. Award her all damages she proves at trial to have suffered including, *inter alia*, compensatory and consequential damages, for back pay and loss of future earnings, the loss of retirement and other benefits, loss of her career, and damages for emotional distress, physical and mental suffering, and medical bills, as well as punitive damages;

3. Award her attorneys' fees, costs, and interest;

4. Award her all available and appropriate statutory and equitable relief, remedying all status and benefits related to her employment and multiplying damages as provided by the statutory claims pled;

5. Award her such other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

        Respectfully submitted by,

        **LISA TARDIFF,**

        By her attorney,

        */s/ Amanda Marie Baer*
        Amanda Marie Baer, BBO #681386
        Mirick, O'Connell, DeMallie & Lougee, LLP
        1800 West Park Drive, Suite 400
        Westborough, MA 01581
        t 508.860.1472
        abaer@mirickoconnell.com

Dated: September 8, 2023