## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LISA TARDIFF,<br><br>        Plaintiff,<br><br>    v.<br><br>LABORERS INTERNATIONAL UNION OF NORTH AMERICA LOCAL UNION 609, CHRISTOPHER MURPHY, and WENDALL GARDNER,<br>        Defendants | C.A. No. 23-cv-40115-MRG |

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

### I. Introduction

Plaintiff Lisa Tardiff alleges that Laborers International Union of North America Local Union 609 ("Local 609"), Christopher Murphy, and Wendall Gardner (collectively, the "Defendants") violated Title VII, Chapter 151B, and the Massachusetts Paid Family and Medical Leave Act ("PFML") in the course of Ms. Tardiff's employment with Local 609. Ms. Tardiff also alleges several common law claims against the Defendants based on the same alleged conduct.

However, the Complaint is deficient in several ways: impermissible claims for individual liability under Title VII and M.G.L. c. 151B; claims for gender discrimination under Title VII and M.G.L. c. 151B based on conduct far outside of the statute of limitations; common law claims that are both inadequately pleaded and that are precluded by the Massachusetts Workers' Compensation Act; failure to state a claim for assault and battery; and failure to state a claim for

PFML interference. Therefore, the Defendants have moved for this Honorable Court to dismiss Counts VI, VIII, IX, X, and XII against Local 609 and all counts against the individual defendants.

## II. Factual Background Relevant to Motion

The following facts are taken from the Complaint. Defendant Local 609 is a labor union that employed Lisa Tardiff as its office manager beginning in October 2003. Compl. ¶¶ 2, 9. Local 609's business manager is defendant Christopher Murphy and its president is defendant Wendall Gardner. Compl. ¶¶ 2-4. Ms. Tardiff alleges that both Mr. Murphy and Mr. Gardner were her supervisors during the time period relevant to the Complaint. Compl. ¶¶ 10-11.

Ms. Tardiff claims that, from the start of her employment with Local 609, she was underpaid compared to her male coworkers, but she further alleges that this alleged disparity ended as of May 31, 2018. Compl. ¶¶ 46-47. She does not allege that she ever filed a charge of discrimination with the Massachusetts Commission Against Discrimination or the Equal Employment Opportunity Commission over this alleged pay disparity. Compl. ¶¶ 46-47. Ms. Tardiff also claims that Mr. Murphy "stunted" her career due to his biased beliefs about women, evinced by alleged statements such as "women don't belong in the field," and that Mr. Murphy at various unstated times sent Ms. Tardiff pictures of himself holding a gun, displayed a gun on his desk facing Ms. Tardiff, and otherwise referenced his alleged illegal possession of guns. Compl. ¶¶ 45, 48.

On May 19, 2021, Ms. Tardiff and Mr. Gardner were alone in Local 609's office building. Compl. ¶ 13. Ms. Tardiff alleges that, while she was eating lunch in the office kitchen, Mr. Gardner approached her wearing a bath towel wrapped around his waist. Compl. ¶ 14. Ms. Tardiff alleges that she raised her hands to block her face and asked Mr. Gardner to put clothes

on, to which Mr. Gardner responded by releasing the towel from his waist and exposing himself. Compl. ¶ 15. Ms. Tardiff proceeded to leave the kitchen, return to her office, and text Mr. Murphy informing him that Mr. Gardner had "exposed himself" to her. Compl. ¶¶ 16-17. Mr. Murphy responded by texting back "I trust you more than anything." Compl. ¶ 17. Meanwhile, Mr. Gardner texted Ms. Tardiff to apologize, stating "Love always Lisa I hate letting you down or making you dread being on our team." Compl. ¶ 18. Ms. Tardiff alleges that this incident was the culmination of increasingly unwelcome conduct by Mr. Gardner, who had been approaching her with fewer and fewer articles of clothing over an unstated period of time. Compl. ¶ 19. Ms. Tardiff subsequently refused Mr. Murphy's requests that she continue working in the office alone with Mr. Gardner. Compl. ¶ 21.

On June 16, 2021, Ms. Tardiff filed an internal complaint with Local 609 over the May 19 incident. Compl. ¶ 22. The Local investigated and Ms. Tardiff was placed on paid leave. Compl. ¶ 23. The investigation concluded that nothing intentional had occurred. Compl. ¶ 32.

On March 1, 2022, Ms. Tardiff filed a charge of discrimination with the Massachusetts Commission Against Discrimination, and jointly with the federal Equal Employment Opportunity Commission. Compl. ¶¶ 6-7, 36. On or about May 9, 2022, Local 609 terminated her paid administrative leave because Ms. Tardiff filed a criminal complaint against Mr. Gardner and because Ms. Tardiff did not consent to an indefinite stay of the MCAD charge. Compl. ¶ 37. Since May 2022, Ms. Tardiff has not received pay or benefits contributions from Local 609. Compl. ¶ 39.

Immediately upon the end of her paid administrative leave, Ms. Tardiff alleges that she "was applying for" Mass. Paid Family and Medical Leave due to anxiety. Compl. ¶¶ 40, 127. Allegedly, the Defendants "attempted to interfere" with her application by "wrongfully

3

indicating" that she had been on a medical leave for her mental health during the administrative leave period. Compl. ¶¶ 41, 128. There is no allegation that she was ever eligible for these benefits, nor that she either received or was denied the benefits. She alleges "substantial and continuing damage," though without specific allegations as to what that damage is. Compl. ¶ 129.

Ms. Tardiff remains "technically employed by Local 609," although she has not been paid or received employment benefits since May 2021.[1] Compl. ¶ 53. Local 609 continues to employ Mr. Gardner and Mr. Murphy, having taken no corrective action against either employee. Compl. ¶¶ 50-51.

### III. Standard of Review

To survive a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), a complaint must contain "sufficient factual matter" to state a claim for relief that is actionable as a matter of law and "plausible on its face." *Ashcroft v. Iqbal*, 556 US 662, 667 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 US 544, 570 (2007)). Although a party need not plead detailed factual allegations to survive a motion to dismiss, the standard "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. "The relevant inquiry focuses on the reasonableness of the inference of liability that the plaintiff is asking the court to draw from the facts alleged in the complaint." *Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 13 (1st Cir. 2011).

On a motion to dismiss, "the court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor." *Duke v. Community Health*

---

[1] Presumably she meant to allege May 2022.

*Connections, Inc.*, 355 F.Supp.3d 49, 54 (D. Mass. 2019) (citing *Langadinos v. American Airlines, Inc.*, 199 F.3d 68, 68 (1st Cir. 2000)). On the other hand, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not 'show[n]'— that the pleader is entitled to relief." *Hogan v. Teamsters Local 170*, 495 F.Supp.3d 52, 58 (D. Mass. 2020) (quoting *Iqbal*, 566 U.S. at 679). Determining whether a complaint states a plausible claim for relief is a "context-specific task" which "requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 566 U.S. at 679.

## IV. Arguments

### A. Title VII and Chapter 151B Claims

1. There is no individual liability under Title VII

Ms. Tardiff brings Title VII claims against Mr. Murphy and Mr. Gardner in Counts II (sexual harassment), IV (retaliation), and X (gender discrimination). However, it is black letter law that "there is no individual employee liability under Title VII." *Fantini v. Salem State Coll.*, 557 F.3d 22, 31 (1st Cir. 2009) ("inconceivable" that Congress intended individual liability under Title VII); *see also Butler v. Adecco USA Inc.*, 189 F. Supp. 3d 305, 309 (D. Mass. 2016) (same). Counts II, IV, and X against Mr. Murphy and Mr. Gardner must therefore be dismissed.

2. Chapter 151B does not authorize individual liability for claims of sexual harassment or gender discrimination

Although Chapter 151B allows for individual liability under certain conditions, individual liability is limited to claims dealing with retaliation (§ 4(4)), interference (§ 4(4A)), and aiding and abetting (§4(5)), as those sections allow for liability against "any person" as opposed to "an employer." *Welgoss v. Dep't of Transp.,* No. CIV.A. 2012-1549-C, 2013 WL

5

4007929, at *2 (Mass. Super. June 21, 2013) (citing *Beaupre v. Cliff Smith & Assoc's.,* 50 Mass.App.Ct. 480, 494–95 (2000), *rev. denied,* 433 Mass. 1101 (2001)). Here Ms. Tardiff's Chapter 151B claims against the individual defendants are Counts I (sexual harassment), III (retaliation), and IX (gender discrimination). Since claims under Chapter 151B for gender discrimination, § 4(1), and sexual harassment, § 4(16A), are only available against "an employer," those claims necessarily fail on their face against the individual defendants. *Welgoss*, 2013 WL 4007929, at *2 (Mass. Super. June 21, 2013) ("Mass.G.L. c. 151B's general prohibition against age and sex discrimination (at § 4(1)) applies to the actions of 'employers,' and *makes no provision for individual liability on the part managing agents or employees*") (emphasis added). Therefore, Counts I and IX must be dismissed against the individual defendants.

3. <u>Even if individual liability for sexual harassment was authorized under Chapter 151B, Ms. Tardiff's claim against Mr. Murphy otherwise fails to state a claim on the merits</u>

Even assuming *arguendo* that Mr. Murphy may be sued in his personal capacity under Chapter 151B for sexual harassment, Count I would nonetheless fail. Put simply, Ms. Tardiff does not allege that Mr. Murphy engaged in any sexually harassing activity. "A claim for sexual harassment lies where the offensive conduct is based on the employee's sex, is unwelcome and is sufficiently severe or pervasive to interfere with the employee's job performance or to create an abusive work environment." *Morehouse v. Berkshire Gas Co*., 989 F. Supp. 54, 61 (D. Mass. 1997) (citing *Ruffino v. State St. Bank & Trust Co*., 908 F.Supp. 1019, 1036 (D.Mass.1995)). The entirety of Mr. Murphy's alleged conduct on this claim are conclusory allegations that "Mr. Murphy created and/or permitted a hostile work environment for and discriminated against Ms. Tardiff on the basis of her sex/gender" and that "Mr. Murphy failed to take reasonable steps to

ensure that the sexual harassment and assault would not continue." Compl. ¶ 60. Ms. Tardiff has

not alleged that Mr. Murphy engaged in any offensive, unwelcome conduct based on Ms.

Tardiff's sex. As such, a claim against him individually for sexual harassment under Chapter

151B must fail.

To the extent that the Court construes the sexual harassment claim against Mr. Murphy as

an "aiding and abetting" claim under Chapter 151B, § 4(5), even though the Plaintiff does not

allege such a claim, as opposed to the sexual harassment claim against Mr. Murphy that is

alleged, the aiding and abetting claim would nonetheless fail. "In order to establish a viable

claim that an employee aided and abetted in sexual harassment perpetrated by a third party, a

plaintiff must demonstrate not only that the employee had knowledge of the ongoing sexual

harassment but failed to act, and that the failure to act caused injury to the plaintiff." *LeClerc v.

Interstate Distributors Div. of Hudson News Co*., No. 9702008, 2000 WL 33170694, at \*10

(Mass. Super. Aug. 31, 2000) (citing *Morehouse,* 989 F.Supp. at 61-63). Here, Ms. Tardiff

alleges one specific culminating incident of sexual harassment perpetrated by Mr. Gardner.

Compl. ¶¶ 15-17. She generically and non-specifically alleges that "Mr. Gardner had recently

started approaching Ms. Tardiff wearing fewer and fewer articles of clothing that are

inappropriate for an office environment." Compl. ¶ 19.[2] Ms. Tardiff does not allege that Mr.

Murphy was aware of any of these alleged incidents involving inappropriate dress, except the

towel incident, which was over before Mr. Murphy had knowledge of it. As such, Mr. Murphy

could not have had knowledge of "ongoing sexual harassment" by Mr. Gardner and could not

---

[2] Defendants find this claim confusing. Does she mean to allege that Mr. Gardner was wearing
fewer clothes at work, which was inappropriate, or does she mean that the clothes Mr. Gardner
was wearing were inappropriate? The ambiguity should be held against the Plaintiff.

have failed to act to stop the one incident that had already occurred, as Ms. Tardiff's injury had already occurred by the time he was aware of it. If anything, the Complaint alleges that Mr. Murphy took Ms. Tardiff's claims against Mr. Gardner seriously, texting her "I trust you more than anything" after she texted Mr. Murphy about the towel incident. Compl. ¶ 17. There is no avenue to hold Mr. Murphy individually liable for his conduct in the Complaint as alleged, even reading the Complaint to include an aiding and abetting sexual harassment claim that it does not actually contain. However, since the Complaint does not make those claims, Count I must be dismissed against Mr. Murphy.

4. Ms. Tardiff's claims against the individual defendants for retaliation fail to allege conduct taken in their individual capacities

As to Count III for Chapter 151B retaliation, the Complaint does not contain any allegations of retaliatory actions taken by Mr. Gardner or Mr. Murphy in their personal capacities to support the claim. Ms. Tardiff alleges that Local 609 retaliated against her "by ceasing her paid administrative leave, interfering with her rights under the PFMLA and FMLA,[3] and constructively discharging her" in response to her criminal complaint against Mr. Gardner. Compl. ¶ 78. However, she does not allege that Mr. Gardner or Mr. Murphy took any action in their individual capacities to retaliate against her. Compl. ¶ 78. This lack of individual conduct is fatal to the Chapter 151B retaliation claims against both individual defendants. *Welgloss*, 2013 WL 4007929, at *2 (retaliation claims against individual defendant fail where the "Complaint contains isolated references to 'retaliation,' [but] none of these references are connected to any allegations directed to" the individual defendant). While Ms. Tardiff briefly alleges that "Mr.

---

[3] This is the only reference to an otherwise unsubstantiated allegation of a Family and Medical Leave Act violation. Defendants are left to guess why the FMLA is listed.

8

Gardner and Mr. Murphy are supervisors of [Ms. Tardiff] and, as such, are individually liable," cases under Chapter 151B make clear that this theory of individual supervisory liability is impermissible. *Savage v. City of Springfield*, No. CV 18-30164-KAR, 2020 WL 3086055, at *4 (D. Mass. June 10, 2020) (dismissing retaliation claim where plaintiff did not allege "any facts that could give rise to an inference that [the individual defendant] actively perpetrated or assisted another in an act that violated Chapter 151B"); *Cloutier v. City of Lowell*, No. CV 15-12780-FDS, 2017 WL 11488633, at *25 (D. Mass. July 12, 2017) (finding individual defendants not liable for retaliation where they did not themselves engage in retaliatory conduct). Without more, Count III fails against both individual defendants.

   5.   Ms. Tardiff's gender discrimination claims against the Defendants are untimely

        Ms. Tardiff alleges that she filed a charge with the Massachusetts Commission Against Discrimination ("MCAD") jointly with the Equal Employment Opportunity Commission ("EEOC") on March 1, 2022. Compl. ¶¶ 6-7. There is a 300-day statute of limitations to initiate a charge with the MCAD and EEOC for both Title VII and Chapter 151B claims. M.G.L. c. 151B, § 5; 42 U.S.C. § 2000e–5(e)(1). Three hundred days before March 1, 2022, is May 5, 2021. Therefore, any events that occurred prior to May 5, 2021, are not within the scope of the charge, and cannot be brought in court. *Alston v. Com.*, 661 F. Supp. 2d 117, 123 (D. Mass. 2009), *as amended* (Oct. 14, 2009) ("Title VII and 151B claims have expiration dates. For both 151B and Title VII, the plaintiff must file his complaint within 300 days of the alleged discriminatory act.").

        Ms. Tardiff brings sex discrimination claims under Chapter 151B and Title VII in Counts IX and X, respectively. To prevail on a claim of employment discrimination under both Chapter 151B and Title VII, a plaintiff must allege: (1) membership in a protected class, (2) adverse

employment decision, (3) discriminatory animus and (4) causation. *Sullivan v. Liberty Mut. Ins. Co.*, 444 Mass. 34, 40; *Cham v. Station Operators, Inc.*, 685 F.3d 87, 93 (1st Cir. 2012).

The factual underpinnings of Counts IX and X are found in paragraphs 44 through 49 of the Complaint. In short, the Complaint alleges that Ms. Tardiff was hired in 2003 and was "deprived of substantial wages and benefits" because of her sex "until Local 609 began to pay Ms. Tardiff a union wage on or about May 31, 2018." Compl. ¶ 46. Both Counts IX and X are based solely on alleged "differences in pay and benefits and career opportunities" Local 609 imposed on Ms. Tardiff. Compl. ¶¶ 114, 120.[4]

However, by Ms. Tardiff's own account, the allegedly discriminatory wages and benefits in question were rectified on May 31, 2018. Therefore, any claim for discriminatory pay and benefits needed to be brought no later than 300 days later, which was on March 27, 2019. Because her charge was filed three years later, Counts IX and X must be dismissed.

### B. Common Law Claims

1. <u>Ms. Tardiff's common law claims against Local 609 and Mr. Murphy are precluded by the Workers' Compensation Act</u>

Ms. Tardiff brings two common law claims against Local 609 and one common law claim against both Mr. Murphy and Mr. Gardner, but all of these claims are precluded by the exclusivity provision of the Massachusetts Workers Compensation Act ("WCA"), M.G.L. c. 152, § 24. The exclusivity provision of the WCA states that "[a]n employee shall be held to have

---

[4] While Ms. Tardiff alleges that Mr. Murphy "stunted" her career by telling her that "a job opportunity would not 'work for [her because she is] a girl,'" she does not allege with any specificity how her career was stunted or whether it was even within Local 609's power to provide Ms. Tardiff with the undescribed job opportunity she sought. Compl. ¶ 45. Such vague and conclusory allegations cannot be the basis for Ms. Tardiff's discrimination claim. *See King v. Boston*, 71 Mass. App. Ct. 460, 469 (2008) ("a successful claim of employment discrimination

waived his right of action at common law or under the law of any other jurisdiction in respect to an injury that is compensable under this chapter, to recover damages for personal injuries…" *Id.* "The mere fact that [Ms. Tardiff] was on leave at the time of the alleged injuries is irrelevant." *Branyan v. SW. Airlines Co.*, 105 F. Supp. 3d 120, 125 (D. Mass. 2015) (rejecting argument that claims are not precluded because injuries were sustained while she was on administrative leave).

The common law claims against Local 609 are Count VI (Negligent Supervision) and Count VIII (Intentional/Negligent Infliction of Emotional Distress). Massachusetts cases make clear that, "[i]f a work-related injury is compensable under the [workers' compensation] act, then § 24 applies and the exclusivity provision bars any other remedies against the employer." *Saab v. Massachusetts CVS Pharmacy*, LLC, 452 Mass. 564, 569 (2008). A work-related injury is compensable where an employee suffers a "personal injury" that arose "out of and in the course of" their employment. *Id.* Therefore, "the exclusivity provision of the workers' compensation act … *precludes an action against an employer for negligent and intentional infliction of emotional distress arising out of sexual harassment in the workplace*." *Doe v. Purity Supreme, Inc.*, 422 Mass. 563, 566 (1996) (emphasis added). The same preclusion applies to claims for negligent supervision arising from sexual harassment in the workplace. *Clarke v. Kentucky Fried Chicken of California, Inc.*, 57 F.3d 21, 29 (1st Cir. 1995); *Patriarca v. Ctr. for Living & Working, Inc.*, No. 99689B, 1999 WL 791888, at *4 (Mass. Super. Sept. 8, 1999) ("G.L. c. 152, s. 24 precludes common law claims, such as negligent supervision-negligent retention, where mental harm is the 'essence' of the claim").

Ms. Tardiff's two common law claims arise out of her employment with Local 609.

---

requires a showing that the plaintiff has been subjected to some adverse action that is material").

Compl. ¶¶ 96-98, 109-111. In fact, the Complaint explicitly states that Ms. Tardiff's claims arise

"[a]s a direct and proximate result of the harassment and discrimination she suffered *at work*."

Compl. ¶ 109 (emphasis added). Therefore, because both of Ms. Tardiff's common law claims

against Local 609 arise from sexual harassment that she allegedly experienced in the workplace,

those claims necessarily fail due to workers' compensation preclusion and must be dismissed.

Further, Ms. Tardiff's one common law claim against both Mr. Murphy and Mr. Gardner,

Count VII (Intentional/Negligent Infliction of Emotional Distress), is similarly precluded by the

WCA, with the Negligent Infliction of Emotional Distress ("NIED") claim being precluded

against both individual defendants and the Intentional Infliction of Emotional Distress ("IIED")

claim being precluded against Mr. Murphy. To begin, intentional tort claims against coworkers

in their individual capacities are not precluded by the WCA where the underlying conduct is "in

no way within the scope of employment furthering the interests of the employer." *O'Connell v.*

*Chasdi*, 400 Mass. 686, 690 (1987). However, "[c]laims for *negligent* infliction of emotional

distress do not fit the exception for intentional torts recognized by the SJC in *Chasdi*, and are

therefore barred by the [Workers' Compensation] Act." *Morehouse, 989 F. Supp. at 65*.

(emphasis in original); *Ruffino*, 908 F. Supp. 1019, 1049-50 (claims for NIED against coworkers

are "plainly barred" by the WCA). Since NIED claims are per se precluded by the WCA, the

NIED claims against both individual defendants must be dismissed.

As to the IIED claim against Mr. Murphy, that claim arises solely out of conduct taken in

the course of his employment as a supervisor and in furtherance of Local 609's interests,

rendering the claim precluded by the WCA. Where a plaintiff's IIED claim targets a coworker

acting within the course of his employment and for the benefit of his employer, that claim is

precluded by the WCA, even where the conduct is harassing or threatening. *Anzalone v. MBTA,*

403 Mass. 119, 125 (1988) (IIED claim precluded where supervisor's harassment of plaintiff was conducted in course of his employment and in furtherance of his supervisory duties); *Gichuhi v. Alt. Supports, Inc*., 90 Mass. App. Ct. 1104 (2016) (IIED claim precluded where supervisor contrived false reasons for plaintiff's termination and threatened plaintiff in furtherance of employer's interests). Here, the allegations against Mr. Murphy in his individual capacity boil down to his request that Ms. Tardiff continue to work in the office with Mr. Gardner after the towel incident and Mr. Murphy's intimidation of Ms. Tardiff through displaying his guns to prevent her from complaining about alleged gender discrimination in the workplace, all of which was in furtherance of the interests of his employer, Local 609. Compl. ¶¶ 21, 48.[5] Since all of Mr. Murphy's alleged conduct was taken in the course of his work as a supervisor and in furtherance of Local 609's interests as his employer, Count VII against Mr. Murphy must also be dismissed in its entirety as WCA precluded.

2. Ms. Tardiff's Assault and Battery claim fails to allege touching, attempted battery, or threatened battery

In Count V for Assault and Battery against Mr. Gardner, Ms. Tardiff alleges that Mr. Gardner "sexually and physically assaulted" her in May 2021, causing Ms. Tardiff to be "the subject of an intentional harmful and offensive act." Compl. ¶ 89. However, the minimal allegations of the Complaint do not sufficiently support a prima facie case for either assault or battery. Therefore, the claim must be dismissed.

Under Massachusetts law, "[a]n actor is subject to liability to another for battery if '[a] he

---

[5] Additionally, state law sets a three-year statute of limitations for claims of emotional distress. M.G.L. c. 260, § 2A. Thus, any conduct prior to September 8, 2020, is not timely challenged. Given the "gun" allegations' proximity to the allegations regarding Ms. Tardiff's disparate pay that were remedied in 2018, this claim would be time barred, if alleged. Compl. ¶¶ 46-48.

acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and [b] a harmful contact with the person of the other directly or indirectly results.'" *Waters v. Blackshear*, 412 Mass. 589, 590 (1992) (quoting Restatement (Second) of Torts § 13 (1985)). Further, "an assault may be accomplished in one of two ways—either by an attempted battery, or by putting another in fear of an immediately threatened battery. Thus, an assault is defined as either an attempt to use physical force on another, or as a threat of use of physical force." *Com. v. Gorassi*, 432 Mass. 244, 247–48 (2000) (internal citations omitted). To show an attempted battery theory of assault, the plaintiff must allege that the defendant attempted to cause physical harm to the victim. *Id.* at 248; *McEntee v. Beth Israel Lahey Health, Inc.*, No. 22-CV-11952-DLC, 2023 WL 4907617, at *2 (D. Mass. Aug. 1, 2023). For threatened battery assault, the plaintiff must allege that the defendant engaged in "objectively menacing" conduct with the intent to cause apprehension of imminent physical harm. *Gorassi*, 432 Mass. at 248.

To begin, Ms. Tardiff does not allege any contact between herself and Mr. Gardner, thus failing to state a claim for battery. As for assault, Ms. Tardiff does not allege that Mr. Gardner attempted to physically touch her, nor did she allege that he intended to cause her apprehension of an offensive physical touching. Nowhere does Ms. Tardiff allege that Mr. Gardner touched her, attempted to touch her, or attempted to cause her apprehension that she would be touched with the intent to do so. In effect, the Plaintiff has mischaracterized her alleged indecent exposure as assault and battery. Without those crucial elements of both assault and battery claims, Count V must be dismissed.

14

3. <u>Ms. Tardiff fails to state a negligent infliction of emotional distress claim against all defendants</u>

Ms. Tardiff alleges in Count VII that the Defendants intentionally and negligently inflicted emotional distress on her. However, this claim suffers from two fatal flaws on the merits of the state law claims (and beyond workers' compensation preclusion arguments above). First, Ms. Tardiff fails to state a claim for NIED, as the conclusory allegations of physical manifestations of harm arising from her emotional distress are insufficient to support an NIED claim. Second, as to the IIED claim, neither Mr. Murphy nor Mr. Gardner is alleged to have engaged in conduct sufficiently extreme and outrageous to support the claim. As such, Count VII must be dismissed.

Beginning with NIED, the prima facie case requires a plaintiff to allege: "(1) negligence, (2) emotional distress, (3) causation, (4) physical harm manifested by objective symptomology, and (5) that a reasonable person would have suffered emotional distress under the circumstances of the case." *Gindi v. Norton*, 216 F. Supp. 3d 199, 205 (D. Mass. 2016) (quoting *Smith v. City of Boston*, No. 03–cv–10062–DPW, 2004 WL 1572626, at *11 (D. Mass. July 13, 2004)). A plaintiff fails to state a claim for NIED if they do not allege in their complaint that they experienced specific physical harm resulting in objective symptomology. *Gindi*, 216 F. Supp. 3d at 205 (motion brought under Rule 12(b)(6)). Claims that a plaintiff "fell ill," was "physically ill," or "required medical intervention" are insufficient, as conclusory recitations of generic physical harm are insufficient to meet the pleading burden. *Id.*; *Taylor v. Moskow*, 13–cv–10802–FDS, 2013 WL 5508157, at *4–5 (D. Mass. Oct. 1, 2013) (allegation that plaintiff "suffered physical harm manifested by objective symptomatology" was conclusory recitation of the element and thus insufficient to state a claim for NIED). Here, Ms. Tardiff's only allegation

of physical harm is that she "suffered from the physical manifestations of shock and panic" after the towel incident, with no further description of what those physical manifestations actually were. Compl. ¶ 16. Without a specific, concrete allegation that Ms. Tardiff suffered physical manifestations of harm from her emotional distress, the NIED claims against both individual defendants fail on the merits and must be dismissed. *Taylor v. Moskow, supra.*

As for the IIED claim, a plaintiff must allege that: "(1) the defendant intended to inflict emotional distress or that he knew or should have known that emotional distress would result from his action; 2) the conduct was extreme and outrageous, beyond all bounds of decency and utterly intolerable in a civilized community; 3) the defendant's conduct caused the plaintiff's distress; and 4) the plaintiff's emotional distress was severe and of a nature that no reasonable person could be expected to endure it." *Morehouse v. Berkshire Gas Co.*, 989 F. Supp. 54, 65 (D. Mass. 1997) (citing *Agis v. Howard Johnson Co.*, 371 Mass. 140 (1976)). Regarding Mr. Murphy, caselaw makes clear that a supervisor's failure to prevent employees from harassing other employees is not sufficiently extreme and outrageous to state a claim for IIED. *O'Brien v. Avis Rent A Car Sys., Inc.*, No. CIV.A. 96-5501-E, 1997 WL 260515, at *6 (Mass. Super. May 1, 1997) ("Actual or constructive awareness of someone else's extreme conduct, along with a failure to prevent that conduct" is insufficient to state an IIED claim); *see Morehouse*, 989 F. Supp. at 66 (not sufficiently extreme or outrageous where plaintiff's supervisor failed to prevent the sexually harassing distribution by coworkers of "obscenely defaced" pictures of plaintiff).

Further, Mr. Gardner's alleged conduct does not rise to the level of "extreme and outrageous" behavior sufficient to state an IIED claim. Plaintiffs must allege that the defendant engaged in "a high order of reckless ruthlessness or deliberate malevolence" resulting in "profoundly shocking conduct." *Conway v. Smerling*, 37 Mass. App. Ct. 1, 8 (1994). Exposing one's genitals does not sufficiently shock the conscience to state an IIED claim. *Tibbs v. Maloney*, No. 002390C, 2008 WL 442544, at *5 (Mass. Super. Jan. 14, 2008) (finding conduct insufficiently extreme and outrageous where defendant gave plaintiff unwanted sexually explicit photographs of herself). As such, Count VII should be dismissed as to both individual defendants.

**C. Paid Family and Medical Leave Act Interference**

1. <u>Ms. Tardiff fails to state a claim for Paid Family and Medical Leave Act Interference</u>

Ms. Tardiff alleges in Count XII[6] that the Defendants violated the Massachusetts Paid Family and Medical Leave Act ("PFML") by "attempting to interfere" with her rights under the statute, M.G.L. c. 175M, § 1 *et seq*. This claim must be dismissed, as there can be no cause of action for "attempted" interference. Nor is there individual liability under the PFML.

Under the PFML, it is unlawful for an "employer to retaliate by discharging, firing, suspending, expelling, disciplining, through the application of attendance policies or otherwise, threatening or in any other manner discriminating against an employee for exercising any right to which such employee is entitled under this chapter or with the purpose of interfering with the exercise of any right to which such employee is entitled under this chapter." G.L. c. 175M, § 9(a).

---

[6] The Complaint skips from Count X to Count XII; there is no count XI alleged.

a. <u>There is no individual liability under Chapter 175M</u>

Because the statute applies only to employers, these claims must be dismissed as to Mr. Gardner and Mr. Murphy. There are no cases yet under this relatively new statute making this point, but given the plain wording of the statute, in addition to how employer vs. individual liability is handled under Chapter 151B and Title VII, there is no reason to expect that individuals could be liable under a statute that concerns conduct specifically by "employers."

b. <u>There is no such cause of action as "attempted interference"</u>

As to alleged employer liability, the statute thus contemplates two aspects. The first is the category of adverse actions, which are the expected categories of termination, suspension, or other such adverse actions like the accrual of attendance points. The second is the purpose, namely interference with one's rights under the PFML. Here, Ms. Tardiff's paid leave had ended before she applied for PFML benefits. Compl. ¶¶ 37, 40. Thus, she fails to allege an adverse action that came after her application for leave. This lack of causation alone is fatal to the allegation.

Moreover, conspicuously absent from the Complaint is an allegation as to whether she was denied or granted the benefits for which she applied. Her allegation is for "attempted" interference. Plaintiff appears to allege that the employer provided information to the state agency that administers the PFML benefit, and which she apparently believes would have caused her to be denied benefits. This is not the kind of action that Section 9 purports to regulate. Rather, the PFML statute has established a regimented structure in which claims are processed. *See* M.G.L. c. 175M, §§ 5 and 8(d). In a situation where an employee believes she was improperly denied PFML benefits based on an employer's misrepresentations, she must appeal the denial under the procedures set out by the Department of Family and Medical Leave (the

18

"Department"). M.G.L. c. 175M, § 8(d).[7] After the Department renders a decision on the employee's appeal, the employee may choose to pursue judicial review of the decision in Massachusetts superior court within thirty days of her receipt of the decision. *Id.*; M.G.L. c. 30A, § 14. Therefore, a claim for PFML interference cannot be based on alleged misrepresentations of an employer to the Department, as allowing those claims would override the specified appeal and judicial review process laid out in the statute. If these claims were allowed to proceed, the federal courts would necessarily be in the position of second-guessing the Department outside of the framework laid out by the statute and in contravention of the Massachusetts superior courts' jurisdiction to review PFML appeals. This would create complex questions of claim preclusion and is otherwise not contemplated by the PFML. The adverse actions that are cognizable under the statute (termination, suspension, etc.) cannot apply to this claim as the end of Ms. Tardiff's paid leave occurred prior to her application for benefits.

Finally, also absent from the Complaint is an allegation that Ms. Tardiff was even eligible for PFML benefits. At least one court has found that, in order to state a claim for PFML interference, the plaintiff must first allege that she was eligible for PFML in the first place. *Marenco v. Broad Inst., Inc*., No. 21-CV-11859-DJC, 2022 WL 2236354, at *3 (D. Mass. May 17, 2022), *appeal dismissed*, No. 22-1484, 2022 WL 17820290 (1st Cir. Aug. 2, 2022) (finding that plaintiff "fail[ed] to state a plausible PFML interference claim" because he did not allege that he suffered from a "serious health condition" that would render him eligible for PFML benefits). Count XII should be dismissed on this basis alone.

---

[7] Ms. Tardiff does not actually allege she was denied benefits.

**V. Conclusion**

Based on the foregoing, the Defendants hereby move this Honorable Court to dismiss Counts VI, VIII, IX, X, and XII against Local 609, and all counts against the individual defendants.

<div style="margin-left:40%">

Respectfully submitted,

LABORERS INTERNATIONAL UNION OF NORTH AMERICA, LOCAL UNION 609, CHRISTOPHER MURPHY, AND WENDALL GARDNER

By their attorneys,

/s/ James A.W. Shaw
James A.W. Shaw, Esq. BBO# 670993
Jocelyn B. Jones, Esq.BBO #640958
SEGAL ROITMAN, LLP
33 Harrison Avenue, 7th Floor
Boston, MA 02111
(617) 603-1432
jshaw@segalroitman.com
jjones@segalroitman.com

</div>

Dated: November 24, 2023

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the NEF (NEF) and paper copies will be sent to those indicated as non-registered participants on November 24, 2023.

<div style="margin-left:40%">

/s/ James A.W. Shaw
James A.W. Shaw

</div>