UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

C.A. No. 23-cv-40115-MRG

| | |
|---|---|
| LISA TARDIFF,<br>        Plaintiff,<br><br>        v.<br><br>LABORERS INTERNATIONAL UNION OF<br>NORTH AMERICA LOCAL UNION 609, et<br>al.,<br>        Defendants. | **PLAINTIFF'S OPPOSITION TO<br>DEFENDANTS' MOTION TO<br>DISMISS** |

Plaintiff, Lisa Tardiff, respectfully submits this Opposition to Defendants, Laborers International Union of North America Local 609 ("Local 609"), Wendall Gardner and Christopher Murphy's Motion to Dismiss.

I.    **Factual Background**

Ms. Tardiff has been employed as an Office Manager of Local 609 since 2003. *Complaint*, ¶ 9.  Ms. Tardiff has been a dedicated and stellar employee and worked under the supervision of Local 609's Business Manager, Defendant Murphy, and President, Defendant Gardner.  *Id.* ¶¶ 9-11.  Defendant Gardner is Defendant Murphy's son-in-law.  *Id.* ¶ 12.

On May 19, 2021, Ms. Tardiff and Defendant Gardner were the only two individuals within Local 609's office building.  *Id.* ¶ 13.  For weeks prior, Defendant Gardner had been approaching Ms. Tardiff wearing fewer and fewer articles of clothing, which were inappropriate for an office environment.  *Id.* ¶ 19. On this day, Ms. Tardiff was eating lunch in a corner of the office kitchen when Defendant Gardner cornered her naked, with the exception of a towel loosely draped across his waist.  *Id.* ¶ 14.  Ms. Tardiff raised her hand to block her face and she

asked Defendant Gardner to put clothes on.  *Id.* ¶ 15.  Rather than stop his sexual advance, Defendant Gardner dropped his towel and exposed his erect penis to Ms. Tardiff.  *Id.* ¶ 15.

Ms. Tardiff forcefully exited the kitchen and escaped to her private office where she closed the door and suffered from the physical manifestations of shock and panic.  *Id.* ¶ 16.  Ms. Tardiff reported the incident to Defendant Murphy, who indicated that he believed her as he stated to her: "I trust you more than anything."  *Id.* ¶ 17.

The May 2021 incident was the culmination of years of shocking discriminatory and hostile conduct toward Ms. Tardiff by Local 609 and Defendant Murphy.  Defendant Murphy repeatedly told Ms. Tardiff that a job advancement opportunity would not **"work for [her because she is] a girl**."  *Id.* ¶ 45.  Defendant Murphy – the Business Manager of a local union – also told Ms. Tardiff that she could not work certain jobs because **"women don't belong in the field."**  *Id.* ¶ 45.  Defendant Murphy repeatedly attempted to intimidate Ms. Tardiff, including by sending her a picture of him holding a **gun** with his face covered.  *Id.* ¶ 48.  He would repeatedly reference his illegal possession of guns and display guns on his desk so that the barrel of the gun faced her.  *Id.* ¶ 48.  Defendant Murphy's conduct was designed to intimidate and silence Ms. Tardiff.  *Id.* ¶ 48.

Defendant Murphy and Local 609 also failed to properly compensate Ms. Tardiff of wages and benefits for 15 years; while Local 609 began to pay Ms. Tardiff a union wage in 2018, the pay received by Ms. Tardiff through 2022 was lesser than it would have been but for the discriminatory conduct and failure to pay equal wages.  *Id.* ¶ 46.  Upon information and belief, other female employees and/or members of Local 609 have complained of discrimination, harassment, and/or retaliation by Defendant Murphy.  *Id.* ¶ 49.

Rather than take corrective action against Defendant Gardner for the May 2021 sexual assault, Local 609 hired an "independent investigator" who is now acting as Defendant's counsel.[1]  *Id.* ¶ 23.  The investigation began in June 2021 but – for reasons which have never been explained – did not conclude until *over seven months later* in January 2022.  *Id.* ¶ 26.  In the interim, Ms. Tardiff was placed on a leave of absence and her requests for updates regarding the investigation were repeatedly ignored.  *Id.* ¶¶ 25, 26.  During the course of the investigation, Ms. Tardiff reported prior incidents of sexual and gender discrimination and she complained of the hostile work environment as set forth above.

On January 28, 2022, Local 609's counsel concluded that Defendant Gardner exposed his penis to Ms. Tardiff but that it was not intentional.  *Id*. ¶ 32.  The "independent investigator" did not determine *why* Defendant Gardner would wear only a towel to cover his erect penis in the office kitchen and/or why he did not leave or put on clothes when Ms. Tardiff rejected his advance.  *Id.* ¶ 33.

Upon information and belief, Local 609 did not engage in a full and fair investigation of the complaint of assault and battery and the complaints of hostile work environment and discrimination.  Local 609 took no corrective action against Defendants Murphy or Gardner.

On December 20, 2021, Ms. Tardiff filed criminal charges against Defendant Gardner.  *Id.*¶ 28.  Upon learning of the criminal charges, Defendants retaliated by immediately ceasing Ms. Tardiff's pay, despite the fact that she remained on a paid leave of absence pending the investigation.  *Id.*  ¶ 29.  After complaining of illegal retaliation, Ms. Tardiff's paid leave was

---

[1]    Ms. Tardiff intends to file a motion to declare that the attorney-client and/or work product privileges do not attach to Segal Roitman's "independent" investigation of Ms. Tardiff's claims and communications related thereto.

reinstated.  *Id*. ¶ 29.  On March 1, 2022, Ms. Tardiff filed a Charge of Discrimination with the Massachusetts Commission Against Discrimination.

On May 9, 2022, Defendants' "independent investigator" reported that Ms. Tardiff's paid leave was immediately terminated because: (1) Ms. Tardiff "filed a Criminal Complaint against Mr. Gardner for sexual assault;" and (2) Ms. Tardiff did not consent to stay of the MCAD matter. *Id.* ¶ 37.  In other words, Defendants' terminated Ms. Tardiff's pay in retaliation for her exercising her legal rights.

After Ms. Tardiff's paid leave was terminated in retaliation for exercising her rights, Ms. Tardiff informed Defendants that she intended to apply for Massachusetts Paid Family and Medical Leave due to her mental health (anxiety and depression) caused by Defendants' wrongful conduct.  *Id.* ¶ 40.  Defendants then threatened to interfere with Ms. Tardiff's PFMLA rights by falsely claiming that Ms. Tardiff's paid administrative leave was a "medical leave" (which, if it were true, would make her ineligible for PFMLA).  *Id.* ¶¶ 41-43.  Upon information and belief, Defendants attempted to and/or did interfere with Ms. Tardiff's application for PFMLA.  *Id.* ¶ 43.

Ms. Tardiff has suffered and continues to suffer extreme emotional distress from Defendant Gardner's sexual assault, Defendant Murphy's hostile, discriminatory and intimidating conduct, and Local 609's absolute failure to adequately respond.  *Id.* ¶ 55.  Ms. Tardiff suffered and continues to suffer extreme emotional distress from all Defendants' retaliation against her for complaining of the illegal conduct and exercising her rights.  *Id.*  In fact, Ms. Tardiff's emotional distress rises to the level of a disability under federal and state law. *Id.*

## II.   <u>Standard of Review</u>.

When assessing a Rule 12(b)(6) motion to dismiss, a court must view the facts as presented in the pleadings, and all reasonable inferences to be drawn therefrom, in the light most favorable to the non-moving party.  *See e.g.*, *Acadia Motors, Inc. v. Ford Motor Co.*, 44 F.3d 1050, 1055 (1st Cir. 1995).  A dismissal for failure to state a claim is appropriate only if it appears, according to the facts alleged, that the plaintiff cannot recover on any viable theory. *Rumford Pharmacy, Inc. v. City of East Providence*, 970 F.2d 996, 998 (1st Cir. 1992).  The issue is not whether a plaintiff will ultimately prevail, but whether she is entitled to offer evidence to support her claims.  *See Vartanian v. Monsanto Co.*, 14 F.3d 697, 700 (1st Cir. 1994).

## III.   **Ms. Tardiff's Claims of Intentional Infliction of Emotional Distress are Not Precluded by the Workers' Compensation Statute.**

In the Complaint, Plaintiff asserts claims of intentional[2] infliction of emotional distress against Defendants Gardner and Murphy (Count VII).  With their Motion to Dismiss, Defendants wrongly assert that the claims against Defendants Murphy and Gardner are barred by the exclusivity provision of the Massachusetts Workers Compensation Act (the "WCA").

Defendants' argument can be easily rejected because the Massachusetts Supreme Judicial Court has plainly held that the exclusive remedy provision of the Workers Compensation Act does <u>not</u> bar claims against colleagues or supervisors who commit "intentional torts not related to the interests of the employer."  *Morehouse v. Berkshire Gas Co.*, 989 F.Supp. 54, 64 (D. Mass. 1997) (quoting *O'Connell v. Chasdi*, 400 Mass. 686, 690 (1987)); *see e.g.*, *Bourbeau v. City of*

---

[2]   The Complaint includes the word "negligent" in the title of the claims.  Ms. Tardiff offered to amend the Complaint to remove the word "negligent;" however, Defendants rejected the offer.  In addition, Ms. Tardiff offered to amend the Complaint to remove Counts VI and VII against the *Local*; Defendants rejected the offer.

*Chicopee*, 445 F.Supp.2d 106, 117 (D. Mass. 2006).[3]  The First Circuit agrees, as this Court has

stated that "the Workers' Compensation Act does not shield individual employees from liability

for any and all intentionally tortious conduct."  *Ruffino v. State Street Bank & Trust Co.*, 908

F.Supp. 1019, 1049 (D. Mass. 1995).

Directly on point to Ms. Tardiff's claims here, this Court in *Morehouse* explained:

"[b]ecause sexual harassment is 'not remotely related to the employer's interests,' an employee

who is subjected to intentional infliction of emotional distress stemming from sexual harassment

by a co-employee is not barred by the Act from suing that individual."  *Morehouse*, 989 F.Supp.

at 64 (internal citations omitted).  The SJC "has reasoned that the right to commit acts [such as

sexual harassment] with impunity was [not] part of the circumstances of employment, unlike

liability for negligently injuring others in the course of employment.  Such intentional torts are

not an accepted risk of doing business."  *O'Connell v. Chasdi*, 400 Mass. 686, 690-91 (1987);

*Ruffino*, 908 F.Supp. at 1050 (quoting *O'Connell*).

Defendants further claim that the intentional infliction of emotional distress claim against

Mr. Murphy is precluded by the WCA, even though he intimidated her when he sent her a

picture of him holding a gun to his chest with his face masked.  Defendants shockingly state that

such intimidation was "in furtherance of the interests of his employer, Local 609."  *See* Motion

to Dismiss, 11.  It would be against common sense and public policy for the Court to accept that

Mr. Murphy's shameful behavior was in the interests of the employer.  Further, it is premature to

---

[3]   "Common law actions are barred [by the WCA] only where: the plaintiff is shown to be an employee; [her]
condition is shown to be a 'personal injury' within the meaning of the compensation act; and the injury is
shown to have arisen 'out of and in the course of . . . employment.'" *Foley v. Polaroid Corp.*, 413 N.E.2d 711,
714 (Mass. 1980).  It is premature to dismiss the claims or make a judgment on Ms. Tardiff's ability to
demonstrate that Mr. Murphy and Mr. Garner were not acting within the course of their employment nor in the
furtherance of their employers' interests. *Foley v. Proctor & Gamble Distributing Co.*, 2003 WL 216996544 (D.
Mass. July 21, 2003) (denying employer's motion for summary judgment on plaintiff's claim of intentional
infliction of emotional distress against

make such determination in resolving a Motion to Dismiss, as "there is not yet enough information to determine whether [defendants] were acting within the course of their employment when the torts allegedly occurred, or if anything they were doing was related to the interests of [Local 609]." *Horney v. Westfield Gage Co.*, 95 F.Supp.2d 29, 37 (D. Mass. 2000) (denying defendants' motion to dismiss a claim of intentional and negligent infliction of emotional distress).

**IV.    It Is Axiomatic that Chapter 151B Provides for Individual Liability.**

Ms. Tardiff asserts claims of sexual harassment (Count I), gender discrimination (Count IX), and retaliation (Count III) under Chapter 151B of the Massachusetts General Laws ("Chapter 151B") against each of the Defendants.  Defendants wrongly assert that there is no individual liability with respect to the claims of sexual harassment and gender discrimination and, therefore, argue that the claims against Defendants Murphy and Gardner – who were each supervisors of Ms. Tardiff – should be dismissed.

Defendants' attempt to avoid individually liability is legally unsound.  "The Massachusetts Appeals Court has stated that Chapter 151B 'does not limit the categories of persons who may be individually liable.  To the contrary, the plain language of the statute provides on its face for individual personal liability in several sections." *Cagle v. Estes*, 531 F.Supp.3d 419, 434 (D. Mass. 2021) (citing *Beaupre v. Cliff Smith & Assoc's.*, 50 Mass.App.Ct. 480, 491 738 N.E.2d at 764 (2000)) (internal citation omitted).[4]  The sections include: (a) § 4(1), which prohibits against employment discrimination because of gender and sex, "sexual

---

[4]    The unreported order of the Massachusetts trial court relied upon by Defendants, *Welgross v. Dep't of Transp.*, 2013 WL 4007929 (Mass. Super. Ct. Jun. 21, 2013), is unpersuasive.  In *Welgross*, the plaintiff's complaint asserted only a claim of "aiding and abetting" discrimination against a supervisor and contained "no evidence of coercion, intimidation, threats or interference with plaintiff's right to work free of unlawful discrimination, and plaintiff's counsel conceded during oral argument that such theories formed no part of [plaintiff's] claims . . ." *Id.* at *3.  *Welgross* has not been relied upon by any court to dismiss a plaintiff's claim of individual liability for sex harassment and/or gender discrimination.

harassment being a form of sex discrimination;" (b) § 4(4A) which makes "it unlawful for any person to 'coerce, intimate, threaten, or interfere with another person in the exercise or enjoyment of any right granted or protected by this chapter, one such right being freedom from sexual harassment;" and (c) § 4(16A) which makes "it unlawful for an individual employer to sexually harass any employee." *Cagle*, 531 F.Supp.3d at 434 (citing *Beaupre*, 738 N.E.2d at 764). Simply stated, "supervisors may be individually liable for unlawful harassment under Chapter 151B." *Id.*; *see also Chatman v. Gentle Dental Ctr.*, 973 F.Supp. 228, 232 n.8 (D. Mass. 1997) ("Chapter 151B creates individual liability for various kinds of discrimination (including sexual harassment) with respect to employers as well as persons other than employers."); *Ruffino v. State Street Bank & Trust Co.*, 908 F.Supp. 1019, 1048 (D. Mass. 1995) ("M.G.L. 151B applies not only to employers acting through their principals and agents, but also to any person who aids and abets discriminatory or retaliatory conduct prohibited under Chapter 151B, as well as to any person who interferes with another's right to work free of unlawful discrimination and retaliation.").

Defendants have no credible basis to argue that Defendants Murphy and Gardner are free from individual liability for the claims under Chapter 151B for sexual discrimination/harassment and gender discrimination and the claims must survive the Motion to Dismiss.

**V.    Ms. Tardiff's Hostile Work Environment/Gender Discrimination Claim is Not Time Barred.**

Ms. Tardiff was subjected to overt and pervasive gender discrimination in the workplace of Local 609 at the hands of Defendants Murphy and Gardner. For years, Defendant Murphy – as the Business Manager (ultimate supervisor) at Local 609 – stifled Ms. Tardiff's career, made demeaning and discriminatory remarks to Ms. Tardiff about her gender, intentionally failed to pay Ms. Tardiff an equal wage because of her gender, and subjected Ms. Tardiff to a hostile

work environment on the basis of her gender.  The pervasive gender discrimination created an environment whereby Defendant Gardner was free to sexually assault Ms. Tardiff without **any** repercussions or consequence.  In fact, Defendant Gardner has been publicly praised by Local 609 after the sexual assault of Ms. Tardiff.

Despite the overwhelming sufficiency of the pleading, Defendants seeks to dismiss Ms. Tardiff's claim of gender discrimination with the argument that the claims are time-barred. Defendants' arguments fail.  It is well-established that a "series of acts may comprise a single hostile environment claim, and 'it does not matter, for purpose of the [Title VII] statute, that some of the component acts of the hostile work environment fall outside the statutory time period.  Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability.'" *Tuli v. Brigham & Women's Hosp.*, 656 F.3d 33, 40-41 (1st Cir. 2011) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002)) (further noting that Massachusetts uses a "parallel analysis")).  "This is the 'classic example of a continuing violation.'" *Id.* (quoting *Tobin v. Liberty Mut. Ins. Co.*, 553 F.3d 121, 130 (1st Cir. 2009)).

Pursuant to the continuing violation theory, the actions of the Defendants that are outside of the 300-day statute of limitations are <u>not</u> time barred because they are components of the extremely hostile work environment that culminated in Defendant Gardner's sexual assault of Ms. Tardiff in May 2021.

**VI.**     <u>**Ms. Tardiff's States a Claim of Assault and Battery.**</u>

Ms. Tardiff asserts a claim of assault and battery against Defendant Gardner in Count V after Mr. Gardner – naked and with an erect penis – cornered Ms. Tardiff in the office kitchen and continued to approach her despite her objection.  Ms. Tardiff was placed in immediate

apprehension of an offensive – particularly a forcibly sexual – physical contact by Defendant Gardner.

"To prevail in a cause of action for civil assault and battery, the plaintiff must show that the defendant intentionally caused an offensive physical contact with the plaintiff or put the plaintiff in immediate apprehension of such a contact by an overt gesture." *Morgan v. Driscoll*, 2022 WL 15695, at *9 (D. Mass. 2002) (citing *Waters v. Blackshear*, 412 Mass. 589, 590-91 (1992)). There is no basis to argue that Ms. Tardiff's claim of assault and battery by Defendant Gardner should be dismissed for failure to state a claim.[5]

### VII.   Ms. Tardiff's Paid Family Medical Leave Interference Claim Stands.

On June 16, 2021, Ms. Tardiff complained about Defendant Gardner and Murphy's misconduct. Local 609 hired Defendants now-counsel as an "independent investigator" and Ms. Tardiff was placed on a leave of absence (after she was initially pressured to return to work). Local 609's independent investigator spent over seven months "investigating" Ms. Tardiff's complaint. The delays were designed to run the clock on Ms. Tardiff's ability to file a Charge of Discrimination and/or a criminal complaint for assault and battery against Defendant Gardner. With the statute of limitations running, Ms. Tardiff filed criminal charge s on December 20, 2021. Local 609 immediately ceased paying Ms. Tardiff, despite the fact that she was on a paid leave of absence pending the impossibly slow investigation.

On March 1, 2022, Ms. Tardiff filed a Charge of Discrimination. On May 9, 2022, Local 609 officially terminated Ms. Tardiff's paid administrative leave. Since the assault, Ms. Tardiff suffered extreme and debilitating emotional distress and anxiety and she could not return to the hostile workplace at Local 609, especially since Local 609 took no action against Defendants

---

[5]   To the extent Defendants fault Plaintiff for not reciting the elements of an assault and battery claim in the Complaint, Ms. Tardiff requests leave to amend the Complaint to do so.

Gardner or Murphy and did not take any steps to ensure Ms. Tardiff's safety.  Ms. Tardiff – now left with no source of income due to the blatant wrongdoing of Defendants – applied for Paid Family Medical Leave ("PFML").  Upon learning of Ms. Tardiff's PFML application, Local 609's "independent investigator" stated that Local 609 was going to report to the Department of Paid Family Medical Leave (the "Department") that Ms. Tardiff had been on a *medical* leave of absence since the assault.  Such statement to the department would be categorically false and designed solely to interfere with Ms. Tardiff's ability to receive PFML benefits for her mental health conditions caused by Defendants' extreme misconduct.  Upon information and belief, Local 609, Mr. Murphy and/or Mr. Gardner made false statements to the Department.

Under the Massachusetts Paid Family Medical Leave Act (the "PFMLA"), which was enacted in 2021, it is "unlawful for any employer[6] to . . . threaten[] or in any other manner discriminat[e] against an employee for exercising any right to which such employee is entitled under [the PFMLA] or with the purpose of interfering with the exercise of any right to which such employee is entitled under [the PFMLA]."  M.G.L. c. 175M, § 9(a).[7]  Defendants' threatened to provide false information to the Department and such threat as clearly designed to cause Ms. Tardiff to not apply for PFMLA benefits and to interfere with her ability to obtain benefits to which she was entitled.  There is no case to support Defendants' arguments for dismissal, and such arguments are premature and do not warrant dismissal.

---

[6]   The First Circuit has "adopted the majority viewpoint that individual supervisors can be liable for FMLA violations."  *See e.g.*, *Rousseau v. Clark Uni.*, 2023 WL 3435570, at *2 (D. Mass. May 12, 2023) (collecting cases) (denying a Motion to Dismiss a plaintiff's complaint, which included claims of interference under the PFMLA.  There is no reason to believe that the PFMLA – which includes strong prohibitions against retaliation and interference and broad remedies – would not be interpreted similar to the federal FMLA.

[7]   The PFMLA provides that "[a]ll remedies available in common law tort actions shall be available to prevailing plaintiffs and shall be in addition to any legal or equitable relief provided" under the PFMLA, including payment of reasonable costs and attorneys' fees.  M.G.L. c. 175M § 9(d).

Respectfully submitted,

**Lisa Tardiff,**

By her counsel,

*/s/ Amanda Marie Baer*
Amanda M. Baer, BBO #681386
Mirick, O'Connell, DeMallie & Lougee, LLP
1800 West Park Drive, Suite 400
Westborough, MA  01581
Phone:  508.860.1474
Fax:     508.983.6261
Email:   abaer@mirickoconnell.com

Dated: December 14, 2024

CERTIFICATE OF SERVICE

I, Amanda Marie Baer, hereby certify that this document, filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on this date.

*/s/ Amanda Marie Baer*
Amanda Marie Baer

Dated:  December 14, 2024