UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LISA TARDIFF,<br>    Plaintiff,<br><br>    v.<br><br>LABORERS INTERNATIONAL UNION OF<br>NORTH AMERICA LOCAL UNION 609,<br>CHRISTOPHER MURPHY, and WENDALL<br>GARDNER,<br>    Defendants | )<br>)<br>)<br>)<br>)<br>) C.A. No. 23-cv-40115-MRG<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**MEMORANDUM IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS THE AMENDED COMPLAINT**

Defendants Laborers International Union of North America Local Union 609 ("Local 609"), Christopher Murphy ("Murphy"), and Wendall Gardner ("Gardner") (collectively, the "Defendants") respectfully submit this memorandum in support of their motion to dismiss the Amended Complaint filed by Plaintiff Lisa Tardiff ("Tardiff").

**Introduction**

The Amended Complaint alleges violations under Chapter 151B, Title VII, the Massachusetts Paid Family and Medical Leave Act (PFML), and common law claims. However, these claims fail to meet the legal standards necessary to proceed. Tardiff's hostile work environment claim is based on what is described as a singular event rather than part of an ongoing pattern of severe or pervasive harassment. Her retaliation claims are similarly flawed, lacking sufficient factual allegations to plausibly show retaliation for engaging in protected activity. Furthermore, Chapter 151B does not impose individual liability on Murphy or Gardner for claims of sexual harassment or gender discrimination, and the retaliation claims against them do not allege specific conduct in their personal capacities. Tardiff's gender discrimination claims

Case 4:23-cv-40115-MRG   Document 41   Filed 10/21/24   Page 2 of 20

are also time-barred, and her common law claims, including assault and battery and intentional infliction of emotional distress, are either insufficiently pleaded or precluded by the Massachusetts Workers' Compensation Act. Lastly, her PFML interference claim lacks both a valid cause of action and the necessary factual basis to demonstrate her eligibility for benefits. The Amended Complaint should be dismissed in its entirety.

## Background

For the purposes of this motion only, the following facts from the Amended Complaint are presented without admitting their accuracy. Defendant Local 609, a labor union, employed Tardiff as office manager starting in October 2003. Am. Compl. ¶¶ 2, 9. Murphy has served as business manager, and Gardner as president. *Id*. at ¶¶ 2-4. Tardiff alleges they were her supervisors during the relevant period. *Id*. at ¶¶ 10-11. Tardiff claims she was underpaid compared to male coworkers, though she states the disparity ended on May 31, 2018. *Id*. at ¶¶ 46-47. She does not allege filing a discrimination charge with the MCAD or EEOC regarding this. *Id*. Tardiff also alleges Murphy hindered her career due to his bias against women, referencing remarks such as "women don't belong in the field," and claims Murphy sent her gun-related photos and displayed a gun on his desk. *Id*. at ¶¶ 45, 48.

On May 19, 2021, Tardiff alleges Gardner approached her wearing only a towel in the office kitchen, exposed himself, and later apologized. *Id*. at ¶¶ 13-18. Tardiff claims this alleged incident followed Gardner having approached her with fewer and fewer articles of clothing over an unstated "recent" period of time. *Id*. at ¶ 19. She refused Murphy's requests to work alone with Gardner afterward. *Id*. at ¶ 21. Tardiff filed an internal complaint on June 16, 2021, and was placed on paid leave during the investigation, which concluded no intentional wrongdoing occurred. *Id*. at ¶¶ 22-32. Tardiff filed a discrimination charge with the MCAD and EEOC on

March 1, 2022. *Id*. at ¶¶ 6-7, 36. On May 9, 2022, Local 609 ended her paid leave, citing her criminal complaint against Gardner and refusal to consent to an indefinite stay of the MCAD charge. *Id*. at ¶ 37.[1] Since May 2022, she has not been paid or received benefits. *Id*. at ¶ 39. Tardiff alleges she applied for Massachusetts Paid Family and Medical Leave due to anxiety and that the Defendants attempted to interfere by misrepresenting her leave status. *Id*. at ¶¶ 40-41. There is no allegation she was denied or received these benefits. *Id*. She remains "technically employed" by Local 609 but has not been paid or received benefits since May 2022. *Id*. at ¶¶ 50-53. Local 609 has not taken corrective action against Gardner or Murphy. *Id*. at ¶¶ 50-51.

## Arguments

To survive a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), a complaint must contain "sufficient factual matter" to state a claim for relief that is actionable as a matter of law and "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 668 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although a party need not plead detailed factual allegations to survive a motion to dismiss, the standard "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555. "The relevant inquiry focuses on the reasonableness of the inference of liability that the plaintiff is asking the court to draw from the facts alleged in the complaint." *Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 13 (1st Cir. 2011). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not 'show[n]'- that the pleader is entitled to relief." *Hogan v. Teamsters*

---

[1] As set out in Section A.2., documents integral to the allegations and considered under Rule 12(b)(6) clarify the terms of Tardiff's leave, demanded by her counsel to facilitate negotiations and ending when negotiations ended.

*Local 170*, 495 F.Supp.3d 52, 58 (D. Mass. 2020) (quoting *Iqbal*, 566 U.S. at 679). Determining whether a complaint states a plausible claim for relief is a "context-specific task" which "requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 566 U.S. at 679. Tardiff's Amended Complaint fails under these standards.

A.     **Tardiff's Claims Under Chapter 151B and Title VII Lack Sufficient Legal Basis.**

Tardiff's Chapter 151B and Title VII claims must be dismissed due to the insufficient allegations of a hostile work environment, the implausible retaliation theory, the unsupported individual liability theory, and the gender discrimination claim being time-barred.

1.    **Tardiff's hostile work environment claims fail to meet the "severe and pervasive" standard, relying on what amounts to an isolated incident.**

Count I, which alleges a hostile work environment against all Defendants under Chapter 151B, and Count II, which alleges the same claim against Local 609 under Title VII, both fail in their entirety because the facts alleged do not show severe and pervasive harassment. "A hostile work environment is one that is 'pervaded by harassment or abuse, with the resulting intimidation, humiliation, and stigmatization[; it] poses a formidable barrier to the full participation of an individual in the workplace.'" *Sansoucy v. Southcoast Health Sys., Inc.*, No. 12-P-1171, 2013 WL 5524116, *2 (Mass. App. Ct. 2013) (quoting *College-Town, Div. of Interco, Inc. v. MCAD*, 400 Mass. 156, 162 (1987)). "In order to prove a hostile work environment, a plaintiff must show that she was subjected to severe or pervasive harassment that materially altered the conditions of her employment." *Noviello v. City of Boston*, 398 F.3d 76, 92 (1st Cir. 2005). The environment must be "objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so."

*Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998). With respect to the "severe or pervasive" analysis,

> there is "no mathematically precise test" capable of identifying when conduct is sufficiently severe or pervasive so as to create a hostile work environment. Rather, several factors, none of which are [sic] individually determinative, are relevant: the severity of the conduct, its frequency, whether it is physically threatening or not, and whether it interfered with the victim's work performance.

*Ponte v. Steelcase Inc.*, 963 F. Supp. 2d 55, 60 (D. Mass. 2013) (internal citations omitted) (quoting *Gerald v. Univ. of Puerto Rico*, 707 F.3d 7, 17 (1st Cir. 2013)).

In this case, Tardiff's allegations fail to meet the legal standard necessary to establish a hostile work environment. While she references an exposure incident involving Gardner, this is described as a singular event rather than part of an ongoing pattern of severe or pervasive harassment. Tardiff's suggestion that Gardner also approached her wearing "fewer and fewer articles of clothing" is too vague and lacks the necessary detail to support a hostile work environment claim. She does not specify how often these incidents occurred, the nature of the attire, or any facts showing that this conduct was objectively offensive or in violation of any workplace dress code. Without specific details showing that these instances were frequent or severe enough to alter Tardiff's working conditions, this claim does not meet the legal threshold for a hostile work environment.

Ample law settles the point that one isolated incident, or even a few, cannot satisfy the "severe and pervasive" standard. See *Linda Scionti, Complainant v. Eurest Dining Services, Respondent*, No. 97-SEM-0185, 2001 WL 1602766, at *11-12 (MCAD Oct. 12, 2001) (and cases cited); see also *Katica v. Webster Bank, N.A.*, No. 13-cv-30072–MAP, 2014 WL 3587383, *6 (D. Mass. July 18, 2014) ("Absent allegations of pervasive conduct, Plaintiff must show that the actions were so severe as to alter the conditions of her employment." (citing *Marrero v. Goya of*

*P.R., Inc.,* 304 F.3d 7, 19 (1st Cir. 2002))); *Noviello*, 398 F.3d at 92 (expressing doubt that single sexual assault, where coworker removed plaintiff's brassiere, hung it from side mirror of their van and bellowed a crude sexual remark, "was sufficient, in and of itself, to create a hostile work environment").

Moreover, Tardiff has not provided allegations to show the conduct she faced was widespread within Local 609 or that it materially affected her employment. The absence of any systematic pattern of discriminatory behavior or abuse further diminishes the merit of her claims. In *Noviello*, the court articulated the necessity of showing a consistent and pervasive pattern of offensive conduct, and the same principle applies here. Tardiff's failure to allege a series of incidents, coupled with the lack of specific details regarding the alleged harassment over time, leads to the conclusion that her hostile work environment claims under Chapter 151B and Title VII cannot withstand scrutiny. As such, both Count I and Count II must be dismissed.

### 2. Tardiff's retaliation claims fail due to lack of plausible allegations of retaliatory actions.

Count III, which alleges retaliation against all Defendants under Chapter 151B, and Count IV, which alleges the same claim against Local 609 under Title VII, both fail in their entirety because the facts alleged do not plausibly show retaliation. More specifically, Tardiff claims that "Defendants retaliated against Plaintiff in violation of M.G.L. c. 151B and Title VII by ceasing her paid administrative leave, interfering with her rights under the PFMLA and FMLA, and constructively discharging her." Am. Compl. ¶ 78.

Tardiff's theory that her paid administrative leave was terminated because she filed a criminal complaint and refused to agree to a stay of MCAD proceedings is based on selective excerpts from communications regarding her leave, taken out of context. *Id.* ¶¶ 37-38. However,

in considering a motion to dismiss for failure to state a claim, "a court may properly consider the relevant entirety of a document integral to or explicitly relied upon in the complaint, even though not attached to the complaint, without converting the motion into one for summary judgment." *Shaw v. Digital Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996). A review of the relevant communications integral to the allegations reveals that in a letter dated June 18, 2021, a copy of which is attached as Exhibit A, Tardiff's counsel specifically demanded that she be placed on paid administrative leave during "settlement negotiations," rather than for an indefinite period. Subsequently, Tardiff's leave was terminated approximately a year later, by way of a letter from Defendants' counsel dated May 5, 2022, which is attached as Exhibit B. This letter indicates that the termination followed the failure of good faith negotiations to resolve the matter. As outlined in the May 5, 2022, letter, Tardiff's decision to pursue a criminal complaint and her refusal to agree to a further stay of the MCAD proceedings signified the end of good faith efforts to reach a resolution. Therefore, there was no retaliation; instead, the actions taken were a recognition that those negotiations had ended.

Tardiff's claim of unspecified "interference" with her rights under the PFML and FMLA statutes, based on her filing a criminal complaint and refusal to agree to a stay of MCAD proceedings, is wholly undeveloped factually and thus fails to support a viable retaliation theory. *Iqbal*, 556 U.S. at 667 (noting that a complaint must contain "sufficient factual matter" to state a claim for relief). The pleading does not clarify how the FMLA is relevant. Additionally, the PFMLA interference claim fails for the reasons outlined in Section C below.

Similarly, Tardiff's claim of "constructive discharge" in retaliation for exercising her rights cannot stand, as she has not alleged sufficient facts to show Defendants effectively forced her to resign. As the court noted in *Suarez v. Pueblo Int'l, Inc.*, 229 F.3d 49, 54 (1st Cir. 2000),

constructive discharge occurs only when the working conditions imposed by the employer are "so onerous, abusive, or unpleasant that a reasonable person in the employee's position would feel compelled to resign." Typically, this requires the employer to either (1) take a significant action against the employee, such as terminating, demoting, or reducing her salary, or stripping her of major responsibilities, or (2) withhold a key benefit of employment, such as neglecting to follow customary promotion practices. *Blackie v. Maine*, 75 F.3d 716, 725-26 (1st Cir. 1996). The allegations do not show Tardiff experienced any of these adverse actions following her filing of the criminal complaint or her refusal to stay MCAD proceedings. Also, she has not resigned.

### 3. Tardiff's sexual harassment and discrimination claims against Murphy and Gardner fail due to no individual liability under those parts of Chapter 151B.

Tardiff's Chapter 151B claims against Murphy and Gardner are Counts I (alleging sexual harassment) and VII (alleging gender discrimination). While Chapter 151B allows for individual liability under certain conditions, such liability is limited to claims for retaliation (§ 4(4)), interference (§ 4(4A)), and aiding and abetting (§ 4(5)), which extend liability to "any person," as opposed to solely "an employer." See *Welgoss v. Dep't of Transp.*, No. 2012-1549-C, 2013 WL 4007929, at *2 (Mass. Super. June 21, 2013), citing *Beaupre v. Cliff Smith & Assoc's.*, 50 Mass.App.Ct. 480, 494-95 (2000), *rev. denied*, 433 Mass. 1101 (2001). See also *Urella v. Verizon New England Inc.*, No. 22-11606-FDS, 2024 WL 1075300, at *4 (D. Mass. 2024) (dismissing claims and stating "Section 4(1) applies, on its face, to employers, not employees.")

Here, Tardiff's claims in Counts I and VII would fall under sections of Chapter 151B that apply only to "employers," specifically § 4(1) (gender discrimination) and § 4(16A) (sexual harassment). These sections do not provide for individual liability, as reaffirmed in *Welgoss*, 2013 WL 4007929, at *2 and *Urella*, 2024 WL 1075300, at *4, which emphasize that the general

prohibitions against discrimination under § 4(1) apply solely to "employers" and do not extend to individual employees or managing agents. Therefore, Counts I and VII must be dismissed as to the individual defendants, leaving only Tardiff's Chapter 151B retaliation claim (Count III) as potentially viable against Murphy and Gardner in their individual capacities under that statute, but that theory too fails for the reasons detailed in subsection 5 below.

    **4.    Even if individual liability were allowed, Tardiff fails to state a viable sexual harassment claim against Murphy.**

Even assuming *arguendo* that Murphy may be sued in his personal capacity under Chapter 151B for sexual harassment, Count I would nonetheless fail. Put simply, Tardiff does not allege that Murphy engaged in any sexually harassing activity. "A claim for sexual harassment lies where the offensive conduct is based on the employee's sex, is unwelcome and is sufficiently severe or pervasive to interfere with the employee's job performance or to create an abusive work environment." *Morehouse v. Berkshire Gas Co.*, 989 F. Supp. 54, 61 (D. Mass. 1997) (citing *Ruffino v. State St. Bank & Trust Co.*, 908 F.Supp. 1019, 1036 (D.Mass.1995)). The entirety of Murphy's alleged conduct on this claim are conclusory allegations that "Mr. Murphy created and/or permitted a hostile work environment for and discriminated against Tardiff on the basis of her sex/gender" and that "Mr. Murphy failed to take reasonable steps to ensure that the sexual harassment and assault would not continue." Am. Compl. at ¶ 60. Tardiff has not alleged that Murphy engaged in any offensive, unwelcome conduct based on Tardiff's sex. As such, a claim against him individually for sexual harassment under Chapter 151B must fail.

To the extent that the Court construes the sexual harassment claim against Murphy as an "aiding and abetting" claim under Chapter 151B, § 4(5), even though Tardiff does not allege such a claim, as opposed to the sexual harassment claim against Murphy that is alleged, the

aiding and abetting claim would nonetheless fail. "In order to establish a viable claim that an employee aided and abetted in sexual harassment perpetrated by a third party, a plaintiff must demonstrate not only that the employee had knowledge of the ongoing sexual harassment but failed to act, and that the failure to act caused injury to the plaintiff." *LeClerc v. Interstate Distributors Div. of Hudson News Co.*, No. 9702008, 2000 WL 33170694, at *10 (Mass. Super. Aug. 31, 2000) (citing *Morehouse,* 989 F.Supp. at 61-63). Here, Tardiff alleges one specific culminating incident of sexual harassment perpetrated by Gardner. Am. Compl. ¶¶ 15-17. She also generically and non-specifically alleges that "Mr. Gardner had recently started approaching Tardiff wearing fewer and fewer articles of clothing that are inappropriate for an office environment." *Id.* at ¶ 19. Tardiff does not allege that Murphy was aware of any of these alleged incidents involving inappropriate dress, except the towel incident, which was over before Murphy had knowledge of it. As such, Murphy could not have had knowledge of "ongoing sexual harassment" by Gardner and could not have failed to act to stop the one incident that had already occurred, as Tardiff's injury had already occurred by the time he was aware of it.

There is no avenue to hold Murphy individually liable for his conduct in the Amended Complaint as alleged, even reading the Amended Complaint to include an aiding and abetting sexual harassment claim that it does not actually contain. However, since the Amended Complaint does not make those claims, Count I must be dismissed against Murphy.

    **5.**    **Tardiff's retaliation claims fail to allege conduct by Murphy and Gardner in their personal capacities.**

As to Count III for Chapter 151B retaliation, the Amended Complaint does not contain any allegations of retaliatory actions taken by Gardner or Murphy in their personal capacities to support the claim. Tardiff alleges that Local 609 retaliated against her "by ceasing her paid

administrative leave, interfering with her rights under the PFMLA and FMLA, and constructively discharging her" in response to her criminal complaint against Gardner. Am. Compl. ¶ 78. However, she does not allege that Gardner or Murphy took any action in their individual capacities to retaliate against her. *Id.* This lack of individual conduct is fatal to the Chapter 151B retaliation claims against both individual defendants. *Welgloss*, 2013 WL 4007929, at *2 (retaliation claims against individual defendant fail where the "Complaint contains isolated references to 'retaliation,' [but] none of these references are connected to any allegations directed to" the individual defendant). While Tardiff briefly alleges that "Mr. Gardner and Mr. Murphy are supervisors of [Tardiff] and, as such, are individually liable," cases under Chapter 151B make clear that this theory of individual supervisory liability is impermissible. *Savage v. City of Springfield*, No. CV 18-30164-KAR, 2020 WL 3086055, at *4 (D. Mass. June 10, 2020) (dismissing retaliation claim where plaintiff did not allege "any facts that could give rise to an inference that [the individual defendant] actively perpetrated or assisted another in an act that violated Chapter 151B"); *Cloutier v. City of Lowell*, No. CV 15-12780-FDS, 2017 WL 11488633, at *25 (D. Mass. July 12, 2017) (finding certain individual defendants not liable for retaliation where they did not themselves engage in retaliatory conduct). Without more, Count III fails against both individual defendants.

   **6.  Tardiff's gender discrimination claims are time-barred.**

Tardiff alleges that she filed a charge with the Massachusetts Commission Against Discrimination ("MCAD") and the Equal Employment Opportunity Commission ("EEOC") on March 1, 2022. Am. Compl. ¶¶ 6-7. Both Title VII and Chapter 151B claims are subject to a 300-day statute of limitations for filing a charge with these agencies. See Mass. Gen. Laws ch. 151B, § 5; 42 U.S.C. § 2000e–5(e)(1). As such, any events occurring before May 5, 2021 -- 300

days before the filing -- are time-barred and cannot be raised in court. See *Alston v. Com.*, 661 F. Supp. 2d 117, 123 (D. Mass. 2009) ("Title VII and 151B claims have expiration dates. For both 151B and Title VII, the plaintiff must file his complaint within 300 days of the alleged discriminatory act.").

In Counts VII and VIII, Tardiff asserts claims of sex discrimination under Chapter 151B and Title VII, respectively. To establish employment discrimination under both statutes, a plaintiff must demonstrate (1) membership in a protected class, (2) an adverse employment action, (3) discriminatory animus, and (4) causation. See *Sullivan v. Liberty Mut. Ins. Co.*, 444 Mass. 34, 40; *Cham v. Station Operators, Inc.*, 685 F.3d 87, 93 (1st Cir. 2012). The factual basis for these claims, as presented in the Amended Complaint, is Tardiff's allegation that she was denied wages and benefits due to her sex until May 31, 2018, when she began receiving union wages. Am. Compl. ¶¶ 44-49. Both Counts VII and VIII center on alleged differences in pay, benefits, and career opportunities imposed by Local 609. *Id.* ¶¶ 102, 108.

However, Tardiff's own allegations confirm that the wage disparity was corrected as of May 31, 2018. Any claim related to discriminatory pay or benefits should have been filed by March 27, 2019, at the latest -- 300 days after this alleged correction. Since her charge was not filed until March 2022, Counts VII and VIII are time-barred and must be dismissed. While Tardiff also contends that her career was stunted when Murphy allegedly told her that a job opportunity "would not work for [her] because [she is] a girl," she fails to provide specific allegations regarding how this remark impacted her career or whether Local 609 had the authority to grant the unnamed opportunity. Am. Compl. ¶ 45. Such vague and conclusory allegations cannot sustain a discrimination claim. See *King v. Boston*, 71 Mass. App. Ct. 460,

469 (2008) ("A successful claim of employment discrimination requires a showing that the plaintiff has been subjected to some adverse action that is material.").

Regarding any argument Tardiff may raise about a "continuing violation" to extend the limitations period, this doctrine does not apply. A continuing violation requires, among other things, that the discriminatory acts be sufficiently similar and occur repetitively, and that the plaintiff was unaware of the discriminatory nature of the earlier acts. See *O'Rourke v. City of Providence*, 235 F.3d 713, 727 (1st Cir. 2001); *Ocean Spray Cranberries, Inc. v. MCAD*, 441 Mass. 632, 642-43 (2004). Here, Tardiff was on notice of the pay disparity as of 2018. More importantly, the alleged pay disparity and the later exposure incident are not sufficiently similar to invoke the continuing violation doctrine. The earlier pay-related allegations are a discrete issue involving compensation inequities, while the later incident involving alleged exposure by Gardner is fundamentally different in nature, involving alleged sexual misconduct. These two types of conduct are not part of a consistent and repetitive pattern of similar behavior, which is necessary for a continuing violation theory. See *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110 (2002) (discrete discriminatory acts, even if related, occur on the day they happen and do not support a continuing violation theory). Accordingly, the continuing violation doctrine does not salvage her untimely claims related to the pay disparity.

**B.** **Tardiff's Common Law Claims Are Legally Insufficient.**

Tardiff's common law claims for intentional infliction of emotional distress ("IIED") and assault and battery are legally insufficient. The IIED claims against Murphy and Gardner lack allegations of extreme and outrageous conduct as required by law, and are further barred by the Workers' Compensation Act (the "WCA") when directed at Murphy. The assault and battery claim against Gardner fails due to the absence of any alleged physical contact or threat thereof.

### 1.       Tardiff fails to state a valid claim for IIED against Murphy and Gardner.

Tardiff alleges in Count VI that Murphy and Gardner intentionally inflicted emotional distress on her. However, this claim suffers from a fatal flaw on the merits of the state law claim (and beyond workers' compensation preclusion arguments below). Indeed, neither Murphy nor Gardner is alleged to have engaged in conduct sufficiently extreme and outrageous to support the claim. As such, Count VI must be dismissed.

To plead a claim for IIED, a plaintiff must allege that: "1) the defendant intended to inflict emotional distress or that he knew or should have known that emotional distress would result from his action; 2) the conduct was extreme and outrageous, beyond all bounds of decency and utterly intolerable in a civilized community; 3) the defendant's conduct caused the plaintiff's distress; and 4) the plaintiff's emotional distress was severe and of a nature that no reasonable person could be expected to endure it." *Morehouse v. Berkshire Gas Co.*, 989 F. Supp. 54, 65-66 (D. Mass. 1997) (citing *Agis v. Howard Johnson Co.*, 371 Mass. 140 (1976)). Regarding Murphy, caselaw makes clear that a supervisor's failure to prevent employees from harassing other employees is not sufficiently extreme and outrageous to state a claim for IIED. *O'Brien v. Avis Rent A Car Sys., Inc.*, No. CIV.A. 96-5501-E, 1997 WL 260515, at *6 (Mass. Super. May 1, 1997) ("Actual or constructive awareness of someone else's extreme conduct, along with a failure to prevent that conduct" is insufficient to state an IIED claim); see *Morehouse*, 989 F. Supp. at 66 (not sufficiently extreme or outrageous where plaintiff's supervisor failed to prevent the sexually harassing distribution by coworkers of "obscenely defaced" pictures of plaintiff).

Further, Gardner's alleged conduct does not rise to the level of "extreme and outrageous" behavior sufficient to state an IIED claim. Plaintiffs must allege that the defendant engaged in "a high order of reckless ruthlessness or deliberate malevolence" resulting in "profoundly shocking

conduct." *Conway v. Smerling*, 37 Mass. App. Ct. 1, 8 (1994). Exposing one's genitals does not sufficiently shock the conscience to state an IIED claim. *Tibbs v. Maloney*, No. 002390C, 2008 WL 442544, at *5 (Mass. Super. Jan. 14, 2008) (finding conduct insufficiently extreme and outrageous where defendant gave plaintiff unwanted sexually explicit photographs of herself). As such, Count VI should be dismissed as to both individual defendants.

### 2. Tardiff's claim for IIED against Murphy is also barred by the WCA.

Tardiff's common law IIED claim against Murphy is precluded by the exclusivity provision of the WCA. The exclusivity provision of the WCA states that "[a]n employee shall be held to have waived his right of action at common law or under the law of any other jurisdiction in respect to an injury that is compensable under this chapter, to recover damages for personal injuries…" Mass. Gen. Laws ch. 152, § 24. Massachusetts cases make clear that, "[i]f a work-related injury is compensable under the [workers' compensation] act, then § 24 applies and the exclusivity provision bars any other remedies against the employer." *Saab v. Massachusetts CVS Pharmacy, LLC*, 452 Mass. 564, 569 (2008).

Intentional tort claims against coworkers in their individual capacities are not precluded by the WCA where the alleged conduct is "in no way within the scope of employment furthering the interests of the employer." *O'Connell v. Chasdi*, 400 Mass. 686, 690 (1987). Courts have consistently held that claims targeting coworkers who act within the scope of their employment for the benefit of their employer are barred by the WCA, even if the conduct involves harassment or threats. See *Anzalone v. MBTA*, 403 Mass. 119, 125 (1988) (finding IIED claim precluded where supervisor's harassment occurred in the course of employment and in furtherance of supervisory duties); *Gichuhi v. Alt. Supports, Inc.*, 90 Mass. App. Ct. 1104 (2016) (holding IIED claim precluded where supervisor's false reasons for termination and threats were in furtherance

of the employer's interests). Whether an action serves the employer's interests depends not on the severity of the alleged misconduct but on whether the action was taken within the scope of the employee's job duties. For example, in *Anzalone*, the SJC barred individual claims against a supervisor who worsened the plaintiff's medical condition by having people smoke nearby, painting outside his office, and placing him in a stifling room, because these actions occurred within the scope of employment. *Anzalone*, 403 Mass. at 124.

In this case, the factual allegations against Murphy are that he requested Tardiff to continue working with Gardner following the towel incident and purportedly displayed guns in an attempt to discourage complaints regarding gender discrimination. While the display of guns may have been misguided, if it occurred, both actions were within the scope of employment to further the interests of Local 609. Am. Compl. ¶¶ 21, 48. Although Tardiff asserts that Murphy's conduct was "not related to [his] employer's interests," *id*. at ¶ 95, this is a conclusory statement unsupported by specific facts, and thus cannot be given weight in a motion to dismiss. *Twombly*, 550 U.S. at 555. Instructing Tardiff to work with Gardner and the alleged display of guns, if they happened, align with Murphy's supervisory role and responsibilities to further the interests of Local 609.

Since all of Murphy's alleged conduct was taken in the course of his work as a supervisor in furtherance of Local 609's interests as his employer, Count VI against Murphy must also be dismissed in its entirety as WCA precluded.

### 3. Tardiff's assault and battery claim against Gardner fails to allege any physical contact, attempted battery, or threatened battery.

In Count V for Assault and Battery against Gardner, Tardiff alleges that Gardner "sexually and physically assaulted" her in May 2021, causing Tardiff to be "the subject of an

-16-

intentional harmful and offensive act." *Id.* at ¶ 89. However, the minimal allegations of the Amended Complaint do not sufficiently support a prima facie case for either assault or battery. Therefore, the claim must be dismissed.

Under Massachusetts law, "[a]n actor is subject to liability to another for battery if '[a] he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and [b] a harmful contact with the person of the other directly or indirectly results.'" *Waters v. Blackshear*, 412 Mass. 589, 590 (1992) (quoting Restatement (Second) of Torts § 13 (1985)). Further, "an assault may be accomplished in one of two ways -- either by an attempted battery, or by putting another in fear of an immediately threatened battery. Thus, an assault is defined as either an attempt to use physical force on another, or as a threat of use of physical force." *Com. v. Gorassi*, 432 Mass. 244, 247–48 (2000) (internal citations omitted). To show an attempted battery theory of assault, the plaintiff must allege that the defendant attempted to cause physical harm to the victim. *Id.* at 248; *McEntee v. Beth Israel Lahey Health, Inc*., No. 22-CV-11952-DLC, 2023 WL 4907617, at *2 (D. Mass. Aug. 1, 2023). For threatened battery assault, the plaintiff must allege that the defendant engaged in "objectively menacing" conduct with the intent to cause apprehension of imminent physical harm. *Gorassi*, 432 Mass. at 248.

To begin, Tardiff fails to establish a claim for battery, as she does not allege any contact between herself and Gardner. For a battery claim to be valid, there must be allegations of actual physical contact, which is absent in this case. Regarding the assault claim, Tardiff does not assert that Gardner attempted to physically touch her or that he intended to instill apprehension of offensive contact. Although the amended version of Tardiff's complaint includes the conclusory statement that "Defendant Gardner placed Ms. Tardiff in immediate apprehension of an

offensive physical contact by an overt gesture on May 19, 2021," it lacks the necessary factual support to demonstrate Gardner's intent to cause such apprehension, which is a requisite element for an assault claim. See Am. Compl. ¶ 90. Importantly, Tardiff does not allege that Gardner touched her, attempted to touch her, or made any actions that would reasonably lead her to believe she would be touched with the intent to do so. In essence, Tardiff has mischaracterized the alleged indecent exposure as assault and battery. Without these essential elements present in both the assault and battery claims, Count V must be dismissed.

**C.      Tardiff's Paid Family and Medical Leave Act Interference Claim Is Deficient.**

Tardiff's claim in Count IX, alleging that Defendants violated the Massachusetts Paid Family and Medical Leave Act (PFML), Mass. Gen. Laws ch. 175M, § 1 et seq., by "attempting to interfere" with her PFML rights, must be dismissed as to all Defendants. First, the PFML statute provides no cause of action for "attempted" interference, and individual liability is not recognized under this statute. The law prohibits employers, not individuals, from retaliating or interfering with an employee's PFML rights. Mass. Gen. Laws ch. 175M, § 9(a). Therefore, the claim must be dismissed against the individual Defendants, as they cannot be held personally liable under the statute.

Second, Tardiff's allegations do not establish a viable interference or retaliation claim even against her employer. The PFML statute targets adverse actions such as termination, suspension, or other retaliatory measures in response to an employee's exercise of PFML rights. In this case, however, Tardiff's paid leave ended before she applied for PFML benefits, Am. Compl. ¶¶ 37, 40, and she fails to allege any adverse action taken after her application. This lack of causation is fatal to her claim, and there is no indication that she was denied PFML benefits or that any employer action contributed to such a denial -- both of which are need for a valid claim.

Additionally, the PFML statute sets out a detailed administrative process for resolving disputes over benefits, including an appeal mechanism through the Department of Family and Medical Leave. Mass. Gen. Laws ch. 175M, §§ 5, 8(d). If Tardiff believed her employer misrepresented facts to the state agency overseeing PFML, her remedy was to appeal through the prescribed process, not file a court action. Allowing this claim to proceed would circumvent the statutory appeal process and improperly extend the jurisdiction of the court to PFML matters meant for administrative review.

Moreover, Tardiff fails to allege that she was even eligible for PFML benefits, a prerequisite for stating a valid interference claim. As in *Marenco v. Broad Inst., Inc.*, No. 21-cv-11859-DJC, 2022 WL 2236354, at *3 (D. Mass. May 17, 2022), where a PFML claim was dismissed for failure to sufficiently allege eligibility, Tardiff's claim here suffers from the same defect and should likewise be dismissed.

Tardiff has previously argued that individual liability should apply under the PFML based on an interpretation given provisions of the Family and Medical Leave Act (FMLA). However, this argument is flawed because the statutory language of the PFML is materially different from the FMLA. The FMLA defines "employer" broadly to include individuals who act in the interest of an employer. 29 U.S.C. §§ 2611(4)(A)(ii)(I), 2615(a)(1)-(2). By contrast, the PFML defines "employer" with reference to the state unemployment statute, which requires an "employing unit" to have a federal Employer Identification Number (EIN), something individuals do not possess. Mass. Gen. Laws ch. 175M, § 1; ch. 151A, § 1(i). The statutory framework of the PFML clearly excludes individual liability, rendering Tardiff's reliance on FMLA standards misplaced.

Therefore, because the statutory language excludes individual liability and Tardiff has failed to allege any substantive grounds for her interference claim, Count IX should be dismissed in its entirety against all Defendants.

## Conclusion

Based on the foregoing, Defendants respectfully submit that their motion to dismiss the Amended Complaint should be allowed.

Respectfully submitted,

Laborers International Union of North America, Local Union 609, Christopher Murphy, and Wendall Gardner

By their attorneys,

/s/ Peter J. Duffy
Peter J. Duffy (BBO #566682)
Pollack Solomon Duffy LLP
31 St. James Avenue, Suite 940
Boston MA 02116
Phone: 617-439-9800
pduffy@psdfirm.com

Dated: October 21, 2024

## Certificate of Service

I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the NEF (NEF) and paper copies will be sent to those indicated as non-registered participants on October 21, 2024.

/s/ Peter J. Duffy
Peter J. Duffy