# MIRICK O'CONNELL
ATTORNEYS AT LAW

EXHIBIT C **EXHIBIT A**

Amanda Marie Baer
Mirick O'Connell
1800 West Park Drive, Suite 400
Westborough, MA 01581-3926
abaer@mirickoconnell.com
t 508.860.1472
f 508.983.6230

June 16, 2021

**Via FedEx**

Christopher Murphy, Business Manager
Laborers Local Union 609
3 Pierce Street
Framingham, MA 01702

Re: Lisa Tardiff – Sexual Assault and Harassment by Wendall Gardner

Dear Mr. Murphy:

Please be advised that I represent Lisa Tardiff in connection with her claims against Laborers Local Union #609 ("Local 609") and Wendall "Walter" Gardner. Please refrain from contacting Ms. Tardiff about any matter until further notice and, instead, please direct all such communications to me.

As you are aware, Ms. Tardiff has been employed by Local 609 as an Office Manager for 17 years. Ms. Tardiff has been a stellar and loyal employee to Local 609. As a female employee in majority-male Local 609, it was not surprising to Ms. Tardiff that she experienced situations that are unusual in a typical workplace. However, Ms. Tardiff was shocked and appalled by the sexual harassment and assault inflicted upon her by Mr. Gardner.

On May 19, 2021, at approximately 2:30 p.m., the only two people in Local 609's office building were Ms. Tardiff and Mr. Gardner. As you know, Mr. Gardner is Ms. Tardiff's supervisor and he is your son-in-law. Ms. Tardiff was eating lunch in a corner of the kitchen when Mr. Gardner approached her *naked* with the exception of a bath towel loosely draped across his waist.[1] Ms. Tardiff held her hands up to her eyes and told Mr. Gardner to put some clothes on. Undeterred, Mr. Gardner released the towel he was holding and exposed his erect

---

[1] Mr. Gardner texted Ms. Tardiff several times during the workday to try to convince her to workout with him in the basement gym. At 1:06 p.m., Mr. Gardner told Ms. Tardiff that he was "waiting for [her]" in the basement. Ms. Tardiff did not want to work out with Mr. Gardner because of his inappropriate attire which made her uncomfortable, and she attempted to politely decline while stating to him that it "feels weird." At 1:36 p.m., Mr. Gardner texted Ms. Tardiff and said that he "changed back to [his] work clothes" after working out. Thereabouts, Ms. Tardiff went outside to walk for exercise on her break. On her way back to the office, Ms. Tardiff realized that she lost her keys to the office. She texted Mr. Gardner and he said that he would unlock the door while he "hopping in the shower" at 2:28 p.m. It was unclear why Mr. Gardner would work out, change into his work clothes, and then shower. However, Mr. Gardner's intention of exposing himself to Ms. Tardiff explains the sequence.

MIRICK O'CONNELL

Christopher Murphy
June 16, 2021
Page 2

penis to her. Such action constitutes civil and criminal sexual harassment, sexual assault and battery, and indecent exposure.

Thankfully, Ms. Tardiff was able to forcefully exit the area, escape to her private office, and close her door. In her office, Ms. Tardiff suffered from the physical manifestations of shock and panic.

While recovering from her shock, Ms. Tardiff texted you, Mr. Murphy, about the incident and how Mr. Gardner "exposed himself" to her after he came "upstairs in a towel naked underneath and then drop[ped] [the] towel." In response, you said to Ms. Tardiff: ". . . I trust you more than anything." However, you also tried to downplay the sexual assault as a "misunderstanding," which Ms. Tardiff quickly rejected. Ms. Tardiff informed you that she was upset and that she could not be in the same building as Mr. Gardner. After you tried to pressure Ms. Tardiff to return to the workplace, Ms. Tardiff informed you that she was "in shock" and using her three weeks of accrued, unused vacation time starting on May 20, 2021.

Meanwhile, Mr. Gardner texted Ms. Tardiff as an apparent apology for the assault. He specifically said: ". . . Love always Lisa I hate letting you down or making you dread being on our team." Still in shock, Ms. Tardiff responded by (falsely) saying: "All is fine walter."[2]

Unfortunately, Mr. Gardner's sexual harassment of Ms. Tardiff on May 19, 2021 was not an isolated incident. Rather, Mr. Gardner had been building up to the event by appearing in her office (uninvited) with progressively less and less clothing, and most recently prior to the May 19 event, he was wearing an article of clothing that can only generously be described as underwear. Ms. Tardiff never welcomed these advances and, instead, unambiguously told Mr. Gardner to put on clothes.

In addition, Ms. Tardiff is aware that she is not the only female employee of Local 609 to be subjected to sexual harassment and discrimination.

To Ms. Tardiff's knowledge, Local 609 has taken no action against Mr. Gardner, whose employment should be terminated for illegal conduct. To Ms. Tardiff, Local 609's protection of a male perpetrator instead of the female victim is not shocking given the history of gender and sex discrimination that Ms. Tardiff has experienced at the Local 609. For example, Ms. Tardiff asked you *several* times if she could progress her career toward becoming a Field

---

[2] At 5:10 p.m. on May 19, Ms. Tardiff texted Marie Murphy (Mr. Gardner's wife and your daughter). As you know, Ms. Tardiff and Ms. Murphy have known each other for years and have a close relationship. Ms. Tardiff copied the text she sent to you and sent it to Ms. Murphy: "At around 2:30 today Walter exposed himself to me . . . that is something I will not stand for it. Its disgusting . . . I am still shaking. He has been working out in underwear type clothing and coming upstairs {to the office} and making me very uncomfortable but today he made a big mistake." Ms. Murphy replied that she was "shocked and heartbroken" and that she did not "know who would do something like that."

MIRICK O'CONNELL

Christopher Murphy
June 16, 2021
Page 3

Representative. In each instance, you responded to her that "women don't belong in the field" or that it "wouldn't work for [you because] you are a girl," or words to that effect.

The conduct of Mr. Gardner and Local 609 constitutes illegal sexual discrimination, harassment, a hostile work environment, assault and battery, and indecent exposure under civil and criminal laws. In addition, Local 609's purposeful stunting of Ms. Tardiff's career solely because of her sex/gender constitutes illegal gender discrimination.

Ms. Tardiff is currently 55 years old. She intended to work for the Local 609 until she reached retirement age at 65. Due to the sexual assault, harassment, and hostile work environment by and/or created by Mr. Gardner and Local 609's failure to take any action that would protect Ms. Tardiff from Mr. Gardner for the remainder of her career, Ms. Tardiff is afraid that she will not be able to return to work at Local 609. In addition, Ms. Tardiff – undoubtedly a very strong woman – has been suffering considerable emotional distress as a result of the sexual assault by Mr. Gardner.

Accordingly, Ms. Tardiff hereby demands that Local 609 and Mr. Gardner pay her $1.8 million, representing ten years of lost wages[1] and lost benefits (she is a union member with two pensions), emotional distress damages, and attorneys' fees. In addition, Ms. Tardiff is entitled to withdraw/roll-over her annuity. If Local 609 and Mr. Gardner chose not to settle, Ms. Tardiff is prepared to the next appropriate legal steps, including, but not limited to, filing a Charge of Discrimination with the Massachusetts Commission Against Discrimination.

I am hopeful that Local 609 recognizes the value in reaching an amicable resolution of this matter. Toward that end, I expect and hereby demand that Ms. Tardiff be placed on paid administrative leave with full benefits while we engage in negotiations. To be clear, this letter is not to be construed as a resignation of Ms. Tardiff's employment while she is suffering from the shock, anxiety, and distress as a result of the disturbing and illegal actions of Mr. Gardner.

In the meantime, you are advised to implement a litigation hold on any materials that may be germane to the above-described allegations including, but not limited to: text messages and emails between Mr. Gardner and you (Mr. Murphy) anytime on or after May 19, 2021, text messages and emails between you and Ms. Murphy anytime on or after May 19, 2021, text messages and emails between you and any person regarding the May 19, 2021 incident, text messages and emails between Mr. Gardner and any person regarding the May 19, 2021 incident.

Finally, pursuant to M.G.L. c. 149, § 52(c), please provide me with a complete copy of Ms. Tardiff's personnel file within five days.

---

[1] Ms. Tardiff also notes that – for several years – she did not receive the hourly wage as required by the Building and Site Wage Agreement.

MIRICK O'CONNELL

Christopher Murphy
June 16, 2021
Page 4

    Thank you for your attention to this matter. Again, I am hopeful that we can find an amicable, private resolution.

Sincere Regards,

*Amanda Marie Baer*

Amanda Marie Baer

AMB/