**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| LISA TARDIFF, | ) |
| Plaintiff, | ) |
| v. | ) Civil No. 4:23-cv-40115-MRG |
| LABORERS INTERNATIONAL UNION OF NORTH AMERICAN LOCAL UNION 609, CHRISTOPHER MURPHY, and WENDALL GARDNER, | ) |
| Defendants. | ) |

<u>**ORDER ON MOTION TO DISMISS [ECF NO. 40]**</u>

**GUZMAN, J.**

Plaintiff Lisa Tardiff ("Plaintiff" or "Tardiff") brings this action against her former employers, Defendant Laborers International Union of North American Local Union 609 ("Local 609"), Manager Christopher Murphy ("Murphy"), and Supervisor Wendall Gardner ("Gardner"), alleging claims of sexual harassment, gender discrimination, retaliation, assault and battery, intentional infliction of emotional distress, and interference with her rights under Massachusetts Paid Family Leave Act in violation of Massachusetts and federal law. [See ECF No. 39]. Defendants have moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), raising four primary arguments: (1) Ms. Tardiff has made insufficient allegations of a hostile work environment and retaliation; (2) her gender discrimination claim is time-barred; (3) she is precluded from her common law claims due to Massachusetts Workers' Compensation Act ("Act"), Mass. Gen. Laws ch. 152, § 24.2; and, (4) that she asserts an unsupported individual liability theory in her claims. [See ECF No. 41 at 1–2]. For reasons set forth below, Defendants' motion is **<u>GRANTED IN PART</u>** and **<u>DENIED IN PART.</u>**

1

I.      **BACKGROUND**

The following relevant facts are taken primarily from the allegations in Plaintiff's Amended Complaint, [Am. Compl., ECF No. 39], and are accepted as true for purposes of this motion. Ruivo v. Wells Fargo Bank, N.A., 766 F.3d 87, 90 (1st Cir. 2014) (explaining that a reviewing court "must separate the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)."). All plausible inferences are made in Plaintiff's favor. Id.

A. **Relevant Facts**

Local 609 hired Ms. Tardiff as an Office Manager in October of 2003. [ECF No. 39 ¶ 9]. Christopher Murphy is the Business Manager, Secretary, and Treasurer of Local 609, and Defendant Wendall Gardner is the President and a Field Representative of Local 609. [Id. ¶¶ 3–4]. At all relevant times, Mr. Gardner and Mr. Murphy had supervisory authority over Ms. Tardiff. [Id. ¶¶ 10–11].

a) **Incident on May 19, 2021.**

On May 19, 2021, while Ms. Tardiff and Mr. Gardner were the only two individuals in Local 609's office building, Mr. Gardner approached Ms. Tardiff wearing only a bath towel draped across his waist. [Id. ¶¶ 13–14]. Ms. Tardiff raised her hands to block her face and asked Mr. Gardner to put clothes on. [Id. ¶ 15]. Mr. Gardner released the towel he was holding and exposed himself to Ms. Tardiff. [Id.] Ms. Tardiff exited the kitchen to her private office. [Id. ¶ 16]. She then texted Mr. Murphy about the incident, reporting that Mr. Gardner "exposed himself" to her, after approaching her in a "towel naked underneath and then dropp[ing] [the] towel." [Id. ¶ 17]. Mr. Murphy responded to Ms. Tardiff's text message, stating "I trust you more than anything." [Id.] Mr. Gardner also texted Ms. Tardiff during this period, stating "Love always Lisa I hate letting you down or making you dread being on our team." [Id. ¶ 18]. Defendants do not contest this event. Ms. Tardiff also alleges that prior to May 19, 2021, Mr. Gardner approached her wearing fewer and fewer articles of clothing than are appropriate for an office setting. [Id. ¶ 19; ECF No.

2

41-1 at 2]. After this incident, Mr. Murphy attempted to require Ms. Tardiff to continue working in the office alone with Mr. Gardner, but she refused. [ECF No. 39 ¶ 21].

### b)  Investigation

In June of 2021, Ms. Tardiff filed an internal complaint, and an independent investigator was assigned to investigate the allegations for the May 19 occurrence. [Id. ¶¶ 22–23]. The investigator conducted interviews with Ms. Tardiff, and she submitted an additional written statement alleging gender discrimination concerning harassment, job enhancements, and proper compensation within their Union [Id. ¶¶ 24, 44–49]. In addition to the alleged assault from Mr. Gardner, Ms. Tardiff alleges that Mr. Murphy stunted Ms. Tardiff's career through his biased beliefs about her capabilities as a woman. [Id. ¶ 45]. Ms. Tardiff alleges that Mr. Murphy repeatedly told her that "women don't belong in the field" and that certain job opportunities would not "work for [her because she is] a girl." [Id.] Ms. Tardiff also alleges that Mr. Murphy attempted to intimidate her during her employment. [Id. ¶ 48]. On several occasions Mr. Murphy sent Ms. Tardiff pictures of him holding a gun, he "display[ed] a gun on his desk facing her, and [] repeatedly referenc[ed] his illegal possession of guns in the workplace." [Id. ¶ 48]. Defendants assert that the display of guns was "misguided" but do not deny that firearms were in the office or that photos with his guns displayed were sent to Ms. Tardiff. [ECF No. 41 at 16]. Local 609 placed Ms. Tardiff on indefinite, paid administrative leave during the investigation. [ECF No. 39 ¶ 25]. On January 31, 2022, Local 609's investigator concluded that Mr. Gardner did not intentionally expose himself to Ms. Tardiff. [Id. ¶ 32].

### c)  Alleged Retaliation

In December of 2021, Ms. Tardiff filed criminal charges against Mr. Gardner with the Framingham Police Department. [Id. ¶ 28]. In December, Local 609 ceased paying Ms. Tardiff for two weeks. [Id. ¶

29]. After Ms. Tardiff complained of the missing payments, on or about January 11, 2022, Local 609 paid Ms. Tardiff for the two weeks of skipped pay. [Id.]

In March of 2022, Ms. Tardiff filed a Charge of Discrimination with the Massachusetts Commission Against Discrimination ("MCAD") and the Equal Employment Opportunity Commission ("EEOC"). [Id. ¶¶ 7, 36]. In May of 2022, Local 609's investigator reported that Local 609 was immediately terminating Ms. Tardiff's paid administrative leave for the following reasons: (1) Ms. Tardiff "filed a Criminal Complaint against Mr. Gardner for sexual assault (in December 2021); and (2) Ms. Tardiff did not consent to Local 609's request for an indefinite 'stay of' the MCAD matter." [Id. ¶ 37; ECF No. 41-2].

After Ms. Tardiff's paid administrative leave was terminated, Ms. Tardiff's counsel informed Local 609's investigator that Ms. Tardiff was applying for Massachusetts Paid Family and Medical Leave ("PFMLA") due to mental health-related concerns. [ECF No. 39 ¶ 40]. Local 609's investigator then indicated that Local 609 considered Ms. Tardiff's previous paid administrative leave for her mental health. [Id. ¶ 41].

Ms. Tardiff also claims that other female employees and/or members of Local 609 have complained of discrimination, harassment, and/or retaliation by Mr. Murphy. [Id. ¶ 49]. Ms. Tardiff alleges that Local 609 has been on notice for this conduct and has taken no corrective action against Mr. Gardner or Mr. Murphy. [Id. ¶¶ 49–51]. Ms. Tardiff remains employed by Local 609 but has not been paid or received any benefits of employment or union membership since May of 2021. [Id. ¶ 53].

### B.  Procedural History

Plaintiff filed this action against Defendants on September 8, 2023. [ECF No. 1]. In July 2024, the Court became aware that the independent investigator assigned to the sexual assault investigation against Mr. Gardner was part of the legal team representing Defendants in this action. The Court dismissed

Defendants' counsel and granted the parties a leave to amend their filings. [See ECF No. 20, 32]. An Amended Complaint was filed September 30, 2024, and serves as the operative complaint. [ECF No. 39]. Defendants moved for dismissal on all counts for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) on October 21, 2024. [ECF No. 40]. Plaintiff opposed Defendant's motion on November 14, 2024. [ECF No. 43]. Defendants replied to the Opposition on November 21, 2024. [ECF No. 44].

## II.    LEGAL STANDARDS

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Twombly, 550 U.S. at 556). When deciding a 12(b)(6) motion to dismiss, a court must "accept the truth of all well-pleaded facts and draw all reasonable inferences therefrom in the pleader's favor." Grajales v. P.R. Ports Auth., 682 F.3d 40, 44 (1st Cir. 2012) (citing Nisselson v. Lernout, 469 F.3d 143, 150 (1st Cir. 2006)). Dismissal is appropriate if the complaint fails to set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." Gagliardi v. Sullivan, 513 F.3d 301, 305 (1st Cir. 2008) (quoting Centro Medico del Turabo, Inc. v. Feliciano de Melecio, 406 F.3d 1, 6 (1st Cir. 2005). At the pleading stage, a plaintiff is not required "to plead facts sufficient to establish a prima facie case," but "those elements are part of the background against which a plausibility determination should be made." Rodriguez-Reyes v. Molina-Rodriguez, 711 F.3d 49, 54 (1st Cir. 2013). At this stage, a "plaintiff must allege a series of facts which at the very least gives rise to an inference of discriminatory animus." Johnson v. Gen. Elec., 840 F.2d 132, 138 (1st Cir. 1988).

III.    **DISCUSSION**

A.    **Title VII and Chapter 151B Claims (Counts I-IV, VII, VIII)**

Ms. Tardiff brings several claims under Title VII and Mass. Gen. Laws ch. 151B ("Chapter 151B") against Defendants Local 609, Mr. Murphy, and Mr. Gardner for (1) discriminating against her in compensation due to her sex and/or gender identity; (2) an uncontested sexual assault by Defendant Gardner on May 19, 2021, and other conduct which created a hostile work environment; (3) the failure of Defendants to address the hostile work environment; and, (4) a constructive discharge from employment due to reporting of and/or resisting said sexual harassment and gender discrimination. [ECF No. 39 ¶¶ 59–61].[1]

Title VII of the Civil Rights Act of 1964 prohibits employment discrimination based on race, color, religion, sex, and national origin. 42 U.S.C. § 2000e-2(a)(1). "It is a violation of Title VII to require an employee 'to work in a discriminatorily hostile or abusive environment.'" Fisher v. Town of Orange, 964 F. Supp. 2d 103, 114 (D. Mass. 2013) (quoting Valentin-Almeyda v. Mun. of Aguadilla, 447 F.3d 85, 94 (1st Cir. 2006). A hostile work environment is one "permeated with 'discriminatory intimidation, ridicule, and insult,' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment.'" Harris v. Forklist Sys. Inc., 510 U.S. 17, 21 (1993) (internal citations omitted) (quoting Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 65, 67 (1986)).

Title VII provides employees a private right of action to bring claims against an employer; these claims cannot be brought against an individual, such as a supervisor. Fantini v. Salem State Coll., 557 F.3d 22, 30 (1st Cir. 2009) ("[T]here is no individual employee liability under Title VII."); 42 U.S.C. §2000e-2(a). To succeed in a Title VII hostile work environment or disparate treatment claim, the plaintiff must establish "some basis for employer liability." Roy v. Correct Care Sols., LLC, 914 F.3d 52, 62 (2019)

---

[1] The Court assumes that the Plaintiff refers to Mass. Gen. Law ch. 151B § 4 ("Chapter 151B") and Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII").

(quoting O'Rourke v. City of Providence, 235 F.3d 713, 728 (1st Cir. 2001)). Employers are subject to vicarious liability for violations caused by its managing employees for adverse employment actions and hostile work environment claims. See Fisher, 964 F. Supp. 2d at 114. An employer is not liable if it takes prompt, effective, remedial action. Hayes v. Henri Bendel, Inc., 945 F. Supp. 374, 380 (D. Mass. 1996).

Massachusetts law similarly prohibits discrimination of "race, color, religious creed, national origin, sex, gender identity, sexual orientation" and additional immutable characteristics. Mass. Gen. Laws ch. 151B § 4(1). Chapter 151B allows a private right of action against individuals, "employer[s], labor organization[s] or employment agenc[ies] alleged to have committed the unlawful practice complained of . . . ." Mass. Gen. Laws ch. 151B § 5; see Mass. Gen. Laws ch. 151B §§1, 4. "Although Chapter 151B has been interpreted largely to mirror Title VII . . . the Supreme Judicial Court of Massachusetts at times construes the Massachusetts statute more broadly to effectuate the legislature's directive to apply it liberally." Thornton v. Ipsen Biopharmaceuticals, Inc., 126 F.4th 76, 81 (D. Mass. 2025) (internal quotation and citations omitted). One difference between the liberal application of Chapter 151B versus Title VII, is its potential application to individuals, such as supervisors, for their personal liability in sexual harassment and gender discrimination suits. Beaupre v. Cliff Smith & Assocs., 738 N.E. 2d 753, 764 (Mass. App. Ct. 2000); Martin v. Irwin Indus. Tool Co., 862 F. Supp. 2d 37, 40-41 (D. Mass. 2012) (explaining supervisors and non-supervisory employees may be found liable under Chapter 151B); Sisco v. DLA Piper LLP, 833 F. Supp. 2d 133, 146 (D. Mass. 2011) ("Unlike Title VII, Chapter 151B explicitly imposes liability on individuals") (citing Mass. Gen. Laws ch. 151B, §§ 4(4A), (5)).

Plaintiff asserts claims under Title VII against Local 609 and asserts claims under Mass. Gen. Laws ch. 151B against Local 609, Mr. Gardner, and Mr. Murphy. Since claims under Chapter 151B and Title VII are evaluated under such a similar legal framework at this pleading stage, this Court need not and will not conduct the same analysis twice.  See Leaver v. Life Care Ctrs. of Am., Inc., 712 F. Supp. 3d

194,  201 (D. Mass. 2024) (explaining, at the motion to dismiss stage, that "Chapter 151B claims operate under a standard that is indistinguishable from Title VII . . . ." (quoting Cloutier v. Costco Wholesale Corp., 390 F.3d 126, 137 (1st Cir. 2004)); see Tzoc Santay v. Ice House LLC, No. 24-cv-11583-ADB, 2024 U.S. Dist. LEXIS 207813, at *8 (D. Mass. Nov. 15, 2024)  (analyzing the disparate treatment a hostile work environment claims under Title VII and Chapter 151B together for the purpose of a motion to dismiss analysis).

### a) Count I: Sexual Harassment under Mass. Gen. Laws ch. 151B against all Defendants; Count II: Sexual Harassment under Title VII against Defendant Local 609

Under Title VII and Chapter 151B, Ms. Tardiff may bring a sexual harassment claim asserting that her employment constituted a hostile work environment. To establish a prima facie case of a hostile work environment under Title VII or Chapter 151B, Ms. Tardiff must show that "(1) [she] is a member of a protected class, (2) [s]he was subjected to unwelcome harassment; (3) the harassment was based on [her] protected status, (4) 'the harassment was so severe or pervasive as to create an abusive work environment,' and (5) 'the harassment was objectively and subjectively offensive.'" Tzoc Santay, No. 24-cv-11583-ADB, 2024 U.S. Dist. LEXIS 207813, at *10 (D. Mass. Nov. 15, 2024) (quoting Avci v. Brennan, 285 F. Supp. 3d 437, 442 (D. Mass. 2018)). "Assessing 'whether a work environment is hostile requires a fact-specific analysis of the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" Id. (quoting Dexter v. Dealogic, LLC, 390 F. Supp. 3d 233, 242 (D. Mass. 2019)). The alleged conduct must be "sufficiently severe or pervasive to alter the conditions of the victim's employment" to assert an abusive working environment. Allard v. Citizens Bank, 608 F. Supp. 2d 160, 166 (D. Mass. 2009) (quoting Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 78 (1998)).

When assessing a hostile work environment claim, courts must address both subjective and objective components. Allard, 608 F. Supp. 2d at 166. "The plaintiff must demonstrate that she actually perceived the environment to be hostile or abusive as a result of the defendant's conduct" and that the "alleged conduct was sufficiently severe or pervasive that a reasonable person would perceive the environment to be hostile or abusive." Id. (citing Harris, 510 U.S. at 21-22 (1993)).

There is no dispute that Lisa Tardiff is a woman and therefore is a member of a protected class. See O'Horo v. Bos. Med. Ctr. Corp., 131 F.4th 1, 13 (1st Cir. 2025) (stating that because "there is no dispute that Dr. O'Horo is a woman" the court will accept that she is a member of a protected class); see also O'Rourke, 235 F.3d at 728 (determining that it was undisputed, that O'Rourke as a woman, is a member of a protected class). There are no facts indicating that Tardiff invited the behavior from Mr. Gardner and Mr. Murphy described in this case. The allegations of sexual assault, and the rejection of employment opportunities are correlated to the fact that Tardiff is a woman in this workplace. For example, Ms. Tardiff alleged that she was subjected to nude exposures by her male supervisor and subjected to demeaning comments regarding her gender. The analysis – presented by the parties and considered by this Court – turns on whether the behavior could be considered severe and pervasive, and whether the conduct was objectively and subjectively offensive.

In the First Circuit, it is established that "a single act of harassment, may if egregious enough, suffice to evince a hostile work environment." Noviello v. City of Boston, 398 F.3d 76, 84 (1st Cir. 2005). "Absent allegations of pervasive conduct, Plaintiff must show that the actions were so severe as to alter the conditions of her employment." Katica v. Webster Bank, N.A., No. 13-cv-30072-MAP, 2014 WL 3587383, at *6 (D. Mass. July 18, 2014). The Defendants argue in their Motion to Dismiss that Tardiff fails to meet the legal standard necessary to establish a hostile work environment because the assault that occurred on May 19, 2021, was a single incident and Plaintiff's assertions that Mr. Gardner previously

wore "'fewer and fewer articles of clothing' is too vague" to support the pattern of severe or pervasive harassment necessary under Chapter 151B. [ECF No. 41 at 5].[2] The Court disagrees.

### i)    As to Mr. Gardner

The allegations made by Ms. Tardiff do not represent a single incident, or a single utterance which may refute a "pervasive" hostile work environment allegation. Katica, 2014 WL 3587383, at *6. Ms. Tardiff has alleged a pattern of her male supervisor repeatedly approaching her inappropriately in fewer and fewer articles of clothing, which escalated to a point of him exposing himself to her while she was alone in the office. Any employee, especially a female employee, could reasonably feel unsafe and physically threatened by these actions. Furthermore, the assault on May 19, 2021, is uncontested by the Defendants. [ECF No. 41 at 5].

### ii)    As to Mr. Murphy

The Court construes the actions described by Plaintiff in regard to Mr. Murphy as an "aiding and abetting" claim under Chapter 151B §4(5). An aiding and abetting claim under Chapter 151B § 4(5) requires proof  "(1) that the defendant committed 'a wholly individual and distinct wrong . . . separate and distinct from the claim in main'; (2) 'that the aider or abetter shared an intent to discriminate not unlike that of the alleged principal offender'; and (3) that 'the aider or abetter knew of his or her supporting role in an enterprise designed to deprive [the plaintiff] of a right guaranteed him or her under [Chapter] 151B.'" Llorens v. LexShares, Inc., 759 F. Supp. 3d 181, 189 (D. Mass. 2024) (alterations in original) (quoting Lopez v. Commonwealth, N.E.2d 67, 82 (Mass. 2012). Defendants assert that the Amended Complaint fails to allege that Mr. Murphy "engaged in any sexually harassing activity," and that there are no

---

[2] The Court directs Defendants to look to their own filings for greater detail. [ECF No. 41-1 at 2] ("Mr. Gardner had been building up to the event by appearing in her office (uninvited) with progressively less and less clothing, and most recently prior to the May 19 event, he was wearing an article of clothing that can only generously be described as underwear.")

allegations that Mr. Murphy engaged "in any offensive, unwelcome conduct based on Tardiff's sex." [ECF No. 41 at 9]. The Court disagrees.

Ms. Tardiff has alleged that Mr. Murphy engaged in sexual harassment against her through his disparaging comments regarding her abilities as a woman, his dismissal of her reports of sexual assault by a supervisor, and that he separately engaged in intimidation tactics by brandishing a weapon at her in the workplace. [ECF No. 39 ¶ 48]. Mr. Murphy told Ms. Tardiff on several occasions that "women don't belong in the field" and that certain job opportunities would not "work for [her because she is] a girl." [Id. ¶ 45]. See Ruffino v. State St. Bank & Tr. Co., 908 F. Supp. 1019, 1036 n.28 (D. Mass 1995) ("The pervasive use of insulting and demeaning terms relative to women in general may serve as evidence of a hostile environment.") Further, Ms. Tardiff alleges that Mr. Murphy – who is Mr. Gardner's father-in-law, [ECF. No. 39 ¶ 12] – did not properly investigate the assault by Mr. Gardner and "failed to take reasonable steps to ensure that sexual harassment and assault would not continue." [Id. ¶60]. Ms. Tardiff also asserts that other female employees of Local 609 have similarly complained of discrimination and harassment by Mr. Murphy himself and that Local 609 has failed to take corrective action. [Id.¶ 49].

Ms. Tardiff also plausibly alleges that Mr. Murphy has engaged in intimidation contributing to a hostile work environment. Specifically, Ms. Tardiff alleges that Mr. Murphy not only displayed a firearm at her while in the office, but that he also boasted about his illegal possession of the weapon. [Id. ¶ 48]. Mr. Murphy is a supervisor who is responsible for other employees' compliance with the law, but his bragging about flouting gun laws combined with his own brandishing of a weapon in the presence of Ms. Tardiff plausibly supports Ms. Tardiff's claim that Mr. Murphy "created and/or permitted a hostile work environment." [Id. ¶60]. Further, Mr. Murphy's physically threatening behavior combined with his pattern of gender-based misconduct rises to the level of intimidation "that poses a formidable barrier to the plaintiff's full participation in the workplace." Gyulakian v. Lexus of Watertown, Inc., 56 N.E.3d 785,

792-93 (Mass. 2016) (internal quotations omitted). Such intimidation can support a claim for a hostile work environment. See id.; Posada v. ACP Facility Servs., 389 F. Supp. 3d 149, 159 (D. Mass 2019) (finding that alleged threats, "if sufficiently egregious, can alone constitute a hostile work environment" claim).

Ms. Tardiff's employment was materially affected by this hostile work environment, as she was placed on administrative leave for seven months and argues that she was constructively discharged from employment when she filed her MCAD complaint, which ultimately led to the termination of her administrative leave benefits. [See ECF No. 39 ¶¶ 25, 37, 39, 53, 54]. The conduct alleged in these early pleadings are sufficient for the claim to move forward.

The Court finds that the Plaintiff has asserted enough information to support her claims at the Motion to Dismiss stage and that the conduct of Defendants, taken as a whole, were severe enough to alter Ms. Tardiff's employment. For the reasons stated above, the Motion to Dismiss on behalf of Mr. Murphy and Mr. Gardner [ECF No. 40] must be **DENIED** as to Count I.

### iii)    As to Local 609

Furthermore, Ms. Tardiff has plausibly alleged that Local 609 is vicariously liable under Chapter 151B and Title VII. Employers are subject to vicarious liability for violations caused by its managing employees for adverse employment actions and hostile work environment claims under both Title VII and Chapter 151B. See Fisher, 964 F. Supp. 2d at 114. Chapter 151B imposes liability on an employer for acts of co-employees only when the employer "knew or should have known of the charged sexual harassment and failed to implement prompt and appropriate action." White v. New Hampshire Dep't of Corr., 221 F.3d 254, 261 (1st Cir. 2000) (quoting Blankenship v. Parke Care Ctrs., Inc., 123 F.3d 868, 872 (6th Cir. 1997)). Plaintiff alleges that other women had reported similar harassment to Local 609 related to Mr. Murphy's behavior and no corrective action was taken. [ECF No. 39 ¶ 49]. "If the offender is a supervisor,

the employer is liable unless it proves the affirmative defense 'that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and . . . that the plaintiff employee unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer or to avoid harm otherwise.'" White, 221 F.3d at 261 (quoting Faragher v. City of Boca Raton, 524 U.S. 775, 778 (1998)). Murphy and Gardner were Ms. Tardiff's supervisors. [ECF No. 39 ¶¶ 10–11]. Defendant Local 609 has presented no affirmative defense or evidence of attempted corrective action. At this stage, the Court must assume the well-pleaded facts to be true, drawing all reasonable inferences in the Plaintiff's favor. Ruivo, 766 F.3d at 90. Therefore, the Motion to Dismiss on behalf of Defendant Local 609 must be **DENIED** as to Count I and Count II.

### b) <u>Count VII: Gender Discrimination under Chapter 151B against all Defendants; Count VIII: Gender Discrimination under Title VII against Local 609</u>

It is unlawful for an employer "to fail to refuse or to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. §2000e-2(a)(1). It is similarly unlawful under Chapter 151B to discriminate on the basis of sex. Mass. Gen. Laws. Ch. 151B §4(1). Under these statutes, a plaintiff may bring claims of disparate treatment or hostile work environment. The Court reads Count VII and VIII to raise claims of disparate treatment. The issue before the court is whether these disparate treatment claims related to Ms. Tardiff's compensation and promotion opportunities are time-barred.

In Counts VII and VIII, Ms. Tardiff asserts that Defendants discriminated against her based on her gender when Local 609 did not properly compensate her as a union member and was deprived of substantial wages and benefits from 2003-2018, until Local 609 gave her union wages. [ECF No. 39 ¶ 46]. Ms. Tardiff asserts that this increased salary did not compensate for her years of incorrect pay, [ECF

No. 43 at 14], and that her wages would have been higher through 2022 but for Local 609's discriminatory conduct against women, and its failure to pay her proper wages for fifteen years. [Id. at 3].

### i) **Timeliness**

In Massachusetts, a party alleging discrimination under Chapter 151B and Title VII may maintain a civil action only if she has previously filed a timely complaint with MCAD and EEOC. Christo v. Edward G. Boyle Ins. Agency, Inc., 525 N.E.2d 643, 644 (Mass. 1988). Massachusetts law requires that such a complaint be filed with the MCAD and the EEOC within 300 days after the alleged unlawful conduct. Mass. Gen. Laws. ch. 151B, §5; 42 U.S.C. §2000e-5(e)(1).

Plaintiff alleges that she filed a charge with MCAD and EEOC on March 1, 2022. [ECF No. 39 ¶¶ 6–8]. Plaintiff filed within the 300-day mark for the alleged sexual assault on May 19, 2021. Plaintiff also brings claims of gender discrimination related to her compensation and promotion opportunities, asserting that she was "subject to different terms, conditions, and privileges of employment due to her gender." [Id. ¶ 46]. Furthermore, Ms. Tardiff asserts that Mr. Murphy, her supervisor, "stunted" her career due to his biased belief that women could not be field agents and refused to consider her for promotions into field work because she is a woman. [Id. ¶ 45].

Whether Plaintiff's claims arising out of events occurring before May 19, 2021, are timely depends on the applicability of the "continuing violation" doctrine.

> The continuing violation doctrine is an equitable exception that allows an employee to seek damages for otherwise time-barred allegations if they are deemed part of an ongoing series of discriminatory acts and there is some violation within the statute of limitations period that anchors the earlier claims. This ensures that these plaintiffs' claims are not foreclosed merely because the plaintiffs needed to see a pattern of repeated acts before they realized that the individual acts were discriminatory.

O'Rourke, 235 F.3d at 732 (internal quotations and citations omitted).

A plaintiff can establish a continuing violation by showing that "(1) at least one discriminatory act occurred within the limitation period, (2) the alleged timely discriminatory acts have a substantial

relationship to the alleged untimely discriminatory acts, and (3) earlier violations outside the limitations period did not trigger the plaintiff's 'awareness and duty' to assert her rights." Bd. of Trs. of the IUOE Loc. 4 Pension Fund v. Alongi, No. 21-cv-10163-FDS, 2024 U.S. Dist. LEXIS 81084, at *19 (D. Mass. May 3, 2024) (quoting Ocean Spray Cranberries, Inc. v. Mass. Com'n Against Discrimination, 808 N.E.2d 257, 266–67 (Mass. 2004)). The continuing violations doctrine "recognizes that some claims of discrimination involve a series of related events that have to be viewed in their totality in order to assess adequately their discriminatory nature and impact" and that a "true continuing violation rewinds the clock for each discriminatory episode along the way." Cuddyer v. Stop & Shop Supermarket Co., 750 N.E. 2d 928, 936 (Mass. 2001) (quoting Mack v. Great Atl. & Pac. Tea Co., 871 F.2d 179, 183 (1st Cir. 1989)). "The classic example of a continuing violation is a hostile work environment, which is composed of a series of separate acts that collectively constitute one unlawful employment practice." Tobin v. Liberty Mut. Ins. Co., 553 F.3d 121, 130 (1st Cir. 2009) (internal quotations omitted) (quoting AMTRAK v. Morgan, 122 S. Ct. 2061, 2047 (2002)).

The Court finds that the pay discrimination and the denial of career opportunities due to Ms. Tardiff's gender are plausibly part and parcel to the hostile environment claim determined above. As another district court has explained,

> Sexual harassment, failure to promote, and pay inequity cases often fall into the [continuing violations doctrine] category. Plaintiffs in these cases experience harm from each employer act (e.g., a harassing comment, a denied promotion, or a smaller paycheck), for which they could recover under Title VII . . . the continuing violation doctrine ensures that these plaintiffs' claims are not foreclosed merely because the plaintiffs needed to see a pattern of repeated acts before they realized that the individual acts were discriminatory.

Tourangeau v. Nappi Distribs., 648 F. Supp. 3d 133, 206 n.254 (D. Me. 2022). The regular payments of a wage below her male-counterparts due to past discrimination would invoke the continuing violation doctrine and therefore are not time-barred. See LeGoff v. Trs. of Bos. Univ., 23 F. Supp. 2d 120, 128 (D. Mass. 1998) ("Because the University continued to pay LeGoff at a discriminatory rate [after the 300-day

statutory period], it continued to violate her rights until that date, and this aspect of her Title IX claim is not time-barred"); see also Bazemore v. Friday, 478 U.S. 385, 396 n.6 (1986) (characterizing ongoing discriminatory pay and working conditions as a "continuing violation").

### ii)    **Plaintiff has met her burden establishing a prima facie case**

To succeed on a claim for employment discrimination by gender, "a plaintiff must first make out a prima facie case and, upon such a showing, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action." Stone v. President, No. 24-11897-LTS, 2025 U.S. Dist. LEXIS 79719 (D. Mass. Mar. 19, 2025); see McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).[3]

"An employment discrimination complaint need not include [specific facts establishing a prima facie case of discrimination] and instead must contain only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 (2002) (citing Fed. R. Civ. P. 8(a)(2)). Here, Plaintiff has alleged general assertions that "she was not properly compensated as a union member" and "upon information and belief, Local 609 did not prevent any male employees from earning Local 609's union wage." [ECF No. 39 ¶ 46]. Plaintiff does not allege specific

---

[3] The Court notes that Massachusetts Chapter 151B and Title VII both apply the framework established in McDonnell Douglas for both discrimination and retaliation claims when "there is no direct evidence of a defendant's retaliatory motive"; however, the two diverge at the final step of the framework. Gunter v. Shapley & Stern, Inc., No. 1:19-cv-12502-IT, 2021 U.S. Dist. LEXIS 84110, *15 (D. Mass. April 30, 2021). Under Title VII, after the defendant offers a legitimate, non-discriminatory reason for its employment decision, the burden shifts back to the plaintiff to demonstrate that the non-discriminatory reasons offered by the defendant are a "pretext for unlawful discrimination." López-Hernández v. Terumo P.R. LLC, 64 F.4th 22, 28 (1st Cir. 2023). The burden at this third step is slightly different under Chapter 151B because Massachusetts is a pretext only jurisdiction, meaning a plaintiff proceeding under Chapter 151B "need only show that the [employer's] facially proper reasons given for its action against [the plaintiff] were not the real reasons." O'Horo, 131 F.4th at 15 (alterations in original) (internal quotations omitted) (quoting Diaz v. City of Somerville, 59 F.4th 24, 29 (1st Cir. 2023). In sum, Title VII requires more than Chapter 151B because it requires the Plaintiff to show that the employer's reasons for the adverse employment action were a pretext for discrimination rather than merely untrue. See López-Hernández, 64 F.4th at 28. Here, the Defendant has not brought forward any affirmative defenses, only that the issue of disparate treatment is time-barred, therefore, for the purpose of this order, the Court views the two statutes under the same analysis.

times when she was denied career advancement due to Mr. Murphy's biased beliefs, nor does she assert with evidence that her male counterparts were receiving higher levels of pay prior to 2018, or how the alleged discriminatory conduct impacted her wages in comparison to her male counterparts from 2018-2022. However, Defendants have not denied the existence of any wage disparity, nor have they articulated in their filings a non-discriminatory reason for the alleged wage disparity, only that the action is time-barred and "corrected" as of May 31, 2018. [ECF No. 41 at 12].

While Ms. Tardiff provides few details to the exact nature of the wage disparity, she has alleged enough facts to state plausible claims for gender discrimination. "The Court need not assume at the pleading stage that the complaint lays out a fixed set of facts in support of her claims of discrimination." Posada, 389 F. Supp. 3d at 159 (citing Gorski v. N.H. Dep't of Corr., 290 F.3d 466, 474 (1st Cir. 2002)). Ultimately, the Court believes that "plaintiff has raised a right to relief above the speculative level" on Counts VII and VIII and is therefore "entitled to discovery." Arbor Networks, Inc. v. Ronca, No. 12-11322-FDS, 2012 U.S. Dist. LEXIS 162583, at *16 (D. Mass. Nov. 14, 2012). Therefore, the Motion to Dismiss as to Count VII is **DENIED** as to Local 609 and Mr. Murphy. The Motion to Dismiss on behalf of Local 609 is **DENIED** as to Count VIII.

### iii)    As to Mr. Gardner

Plaintiff restates and incorporates assertions related to her hostile work environment claim into her gender discrimination claim. Chapter 151B §4(1) prohibits discrimination on the basis of sex. Mass. Gen. Laws ch. 151B, § 4(1). The statute defines discrimination on the basis of sex to include sexual harassment. Id. §1(18). Section 4(16A) specifically prohibits sexual harassment. Id. § 4(16A) ("It shall be an unlawful practice . . . for an employer, personally or through its agents, to sexually harass any employee."). A plaintiff "need not allege a discriminatory animus in order to succeed on [a] claim under [Chapter 151B §4(16A)][,]" which prohibits sexual harassment. Sauer v. Belfor USA Grp., Inc., 205 F. Supp. 3d 209,

17

216 (D. Mass. 2016). As discussed supra, Plaintiff has pled significant sexual harassment claims against Mr. Gardner. Therefore, the Motion to Dismiss is **DENIED** as to Mr. Gardner.

### c) Count III: Retaliation under Chapter 151B against Defendants Local 609, Murphy, and Gardner; Count IV: Retaliation under Title VII against Local 609.

Title VII makes it an unlawful act for an employer "to discriminate against any [individual] . . . because he has opposed any practice made an unlawful employment practice" under Title VII. 42 U.S.C. § 2000e-3(a). Under Title VII and Mass. Gen. Laws ch.151B § 4(4), (4A), to make out a prima facie case of retaliation, plaintiff must demonstrate that "(1) she engaged in protected activity; (2) she suffered some materially adverse action; and (3) the adverse action was causally linked to her protected activity." Dixon v. International Bhd. of Police Officers, 504 F.3d 73, 81 (1st Cir. 2007); see Psy-Ed Corp. v. Klein, 947 N.E.2d 520, 530 (Mass. 2011). "The term 'protected activity' refers to action taken 'to protest or oppose statutorily prohibited discrimination.'" Fisher, 964 F. Supp. 2d at118 (2013) (quoting Fantini, 557 F.3d 22 at32). "Plaintiff must also show that the retaliator knew about her protected activity, as 'one cannot have been motivated to retaliate by something he was unaware of.'" Fisher, 964 F. Supp. at 118 (quoting Medina-Rivera v. MVM, Inc., 713 F.3d 132, 139 (1st Cir. 2013)).

### i) As to Local 609

Ms. Tardiff asserts that she suffered retaliation for filing criminal charges against Mr. Gardner, demonstrated by Local 609 denying her two weeks of payment after she pressed criminal charges against Mr. Gardner. [ECF No. 39 ¶ 29]. She also asserts that the termination of her administrative leave benefits is evidence of retaliation for her filing an MCAD complaint and refusing the requested stay of the matter during settlement negotiations. [Id. ¶ 37]. Defendants assert that Ms. Tardiff's "good faith participation in the investigation was [a] necessary precursor to the completion of the investigation," and the filing of

criminal charges and refusing to stay the MCAD filing, after seven months of ongoing investigations, were "not representative of someone negotiat[ing] in good faith." [ECF No. 41-2 at 1-2].

Reporting a sexual assault and pervasive gender discrimination, is a protected activity under Mass. Gen. Laws. ch. 151B §4(4) (it is unlawful for "any person . . . to discharge, expel or otherwise discriminate against any person because [s]he has . . . filed a complaint, testified or assisted in any proceeding under [Chapter 151B, § 5]"). Ms. Tardiff engaged in conduct protected by Chapter 151B, §4 when she filed the complaint of gender discrimination with MCAD and filed her criminal complaint against Mr. Gardner. She also engaged in protected conduct when she made her complaints about Mr. Gardner to Mr. Murphy. Morales v. Fed. Express Corp., 610 F. Supp. 3d 317, 327 (D. Mass. 2022) ("Protected activity includes not only the filing of formal charges of discrimination but also informal protests of discriminatory employment practices, including making complaints to management." (quoting Jacquet v. City of Somerville, No. CV 18-10167-GAO, 2020 U.S. Dist. LEXIS 114471, at *4 (D. Mass. June 30, 2020)).

An adverse employment action is typically one that actions that alter a term or condition of employment, "such as demotions, disadvantageous transfers or assignments, refusals to promote, unwarranted negative job evaluations, and toleration of harassment by other employees." Rivera-Rivera v. Medina & Medina, Inc., 898 F.3d 77, 94 (1st Cir. 2018) (citing Marrero v. Goya of P.R., Inc., 304 F.3d 7, 23 (1st Cir. 2002)). "But the anti-retaliation provisions of Title VII also cover employer actions that are materially adverse, specifically those that are harmful enough to dissuade a reasonable employee from complaining about discrimination." Fournier v. Massachusetts, No. 20-2134, 2021 U.S. App. LEXIS 27676, at *7-8 (1st Cir. Sep. 15, 2021) (citing Rivera-Rivera, 898 F.3d at 95).

The delay in payment and the termination of administrative leave and union benefits as a response to the filing of a criminal and MCAD complaint constitute a materially adverse employment action, as it directly interferes with the employee's income and may dissuade a reasonable employee from pursuing a

complaint about a sexual assault and pervasive discrimination. See Rivera-Rivera, 898 F.3d at 95 It is established in the First Circuit that "temporal proximity alone can suffice to 'meet the relatively light burden of establishing a prima facie case of retaliation." DeCaire v. Mukasey, 530 F.3d 1, 19 (1st Cir. 2008). Given the information provided by the parties, including the assertions made by Defendants' previous counsel to Ms. Tardiff regarding the reasons for terminating payment, [see ECF No. 41-2 at 1-2], the Court views the termination of payment and administrative leave benefits as retaliation. See Lawrence v. Next Ins., Inc., No. 24-11285-WGY, 2025 U.S. Dist. LEXIS 45788, at *39 (D. Mass. Mar. 13, 2025) ("The close temporal proximity between her request for medical leave and her termination, in view of the larger picture surrounding those events, is enough to suggest plausibly that her protected activity caused her termination.").

For the reasons stated above, the Motion to Dismiss on behalf of Local 609, as the employer of Ms. Tardiff, must be **DENIED** as to Count IV.

### ii) As to Mr. Murphy and Mr. Gardner

The same cannot be said of Ms. Tardiff's claims against Defendants Gardner and Murphy. The Court finds that Plaintiff has not sufficiently pled enough facts to plausibly allege that Defendants Gardner and Murphy took retaliatory action against Ms. Tardiff after she engaged in her protected activities. Ms. Tardiff claims that she did not return to the office after the incident of May 19, and does not allege any ongoing communication with Mr. Gardner or Mr. Murphy. Information has not been provided to the Court that Defendants Murphy and Gardner had sufficient knowledge of Ms. Tardiff's filings nor that they had control over her salary or administrative leave payments to conduct the alleged retaliation. Therefore, the Court must **GRANT** the Motion to Dismiss for Defendants Murphy and Gardner as to Count III.

**B.**    **Count IX: Interference with Plaintiff's rights under Massachusetts Paid Family Medical Leave Act**

Related to her retaliation claims, Plaintiff alleges that Defendants Local 609, Murphy, and Gardner interfered with her rights under the Massachusetts Paid Family Medical Leave Act ("PFMLA"), Mass. Gen. Laws Ann. ch. 175M, § 9. The PFMLA, provides job-protected leave for qualifying family and medical reasons. The statute prohibits employer interference, stating that "[i]t shall be unlawful for any employer to . . . interfer[e] with the exercise of any right to which such employee is entitled under this chapter." Mass. Gen. Laws ch. 175M, § 9. This language closely parallels the Family and Medical Leave Act's ("FMLA") interference provision, which similarly states that "[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this title." 29 U.S.C.A. § 2615.

Plaintiff alleges that after her paid administrative leave was terminated, she informed Local 609's independent investigator that she was applying for Massachusetts PFMLA. [ECF No. 39 ¶ 40]. Subsequently, Plaintiff claims that Local 609's investigator indicated for the first time that Local 609 considered Plaintiff's paid administrative leave to be for her mental health. [Id. ¶ 41]. Plaintiff contends that by characterizing her paid administrative leave as for her mental health, the Defendants sought to interfere with her PFMLA application by indicating to the Department of Paid Family Medical Leave ("Department"), that she had previously taken <u>medical</u> leave rather than administrative leave for purposes of the investigation. [Id. ¶ 116]. An individual who qualifies for PFMLA is "not eligible for more than 12 weeks of family leave in a benefit year[,]" and a "benefit year" is defined as "the period of 52 consecutive weeks beginning on the Sunday immediately preceding the first day that job-protected leave… commences[.]" Mass. Gen. Laws Ann. ch. 175M, § 1-2. Plaintiff does not explicitly state, but the Court presumes, that if Plaintiff's paid administrative leave was considered to be for mental health reasons, she

would thereby be precluded from obtaining PFMLA benefits, assuming the subsequent application was considered within the same calendar year.

Guidance regarding the analysis of claims under the PFMLA is limited. Given the similar language and objective of the PFMLA and the FMLA, the Court will evaluate the claim using the case precedent of this Circuit developed for FMLA claims to determine whether Plaintiff has sufficiently stated a claim.

### a)  As to Local 609

Plaintiff asserts that Defendants threatened to provide false information to the Department in order to cause Plaintiff to not apply for PFMLA benefits, thereby interfering with her ability to obtain benefits to which she was entitled. [ECF No. 43 at 16]. Defendants counter that the PFMLA does not "provide [a] cause of action for 'attempted' interference, and [that] individual liability is not recognized under the statute." [ECF No. 41 at 18]. Defendants also claim that even if the PFMLA supported an "attempted" interference theory, Plaintiff's allegations do not establish a causal link from Local 609's action to harm suffered by Plaintiff, as Plaintiff's paid leave ended before she applied for PFMLA benefits, and she does not allege any adverse action taken after her application or a denial of benefits. [Id.] Defendants assert that Plaintiff fails to allege that she was even eligible for PFMLA benefits, which is a prerequisite for stating a valid interference claim. [Id. at 19].

> To establish a prima facie case of interference, a plaintiff must establish that: (1) [S]he was eligible for the FMLA's protections; (2) her employer was covered by the FMLA; (3) she was entitled to leave under the FMLA; (4) she gave her employer notice of her intention to take leave; and (5) her employer denied her FMLA benefits to which she was entitled.

McKeon v. Robert Reiser & Co., 770 F. Supp. 3d 351, 376 (D. Mass. 2025) (quoting Rousseau v. Clark Univ., No. 22-cv-40118-DJC, 2023 U.S. Dist. LEXIS 83599, at *2 (D. Mass. May 12, 2023)).

Applying the five-factor framework for interference with PFMLA rights, Plaintiff is likely eligible for PFMLA protections given the statute's broad remedial purpose and her alleged mental health

conditions stemming from the alleged assault. [ECF No. 39 ¶ 55]. Second, Defendant Local 609 does not contest that it is a covered entity by the PFMLA. Third, assuming Plaintiff met the financial eligibility requirements to be a "covered individual" under the statute, she was entitled to take leave under the PFMLA. Fourth, Plaintiff's discussion with Local 609's independent investigator regarding her PFMLA application constitutes sufficient notice to the employer of her intent to take leave. [Id. ¶ 40]. However, the analysis falters on the fifth factor: denial of benefits. The Amended Complaint does not allege sufficient facts to plausibly establish that Plaintiff was denied PFMLA benefits. Although she alleges interference by characterizing her paid administrative leave as prior mental health leave to undermine her PFMLA claim, the record lacks clear evidence that she ever applied, or was actually denied, benefits to which she was entitled. Courts in the First Circuit have held that the "'key issue' in any FMLA interference claim 'is simply whether the employer provided its employees the benefits to which she was entitled per the FMLA.'" Gregg v. Ne. Univ., 743 F. Supp. 3d 257, 276 (D. Mass. 2024) (quoting Carrero-Ojeda v. Autoridad de Energía Eléctrica, 755 F.3d 711, 722 (1st Cir. 2014)).

The Court finds that Plaintiff has not alleged that she was denied the PFMLA benefits to which she was entitled and therefore has not shown that Local 609 interfered with her PFMLA benefits. See McKeon., 770 F. Supp. 3d at 376 ("Plaintiff's claims are dismissed to the extent that Plaintiff has conceded that no requested leave under the FMLA or the PFMLA was ever denied"). Therefore, the motion to dismiss for the interference claim asserted against Defendant Local 609 is **GRANTED.**

### b) As to Mr. Murphy and Mr. Gardner

As stated, Plaintiff has not alleged sufficient information to succeed on her PFMLA claim. Even if Plaintiff could meet the elements necessary to establish an interference claim, Defendants Murphy and Gardner could not be held individually liable. Plaintiff has alleged that Gardner and Murphy had

supervisory authority over her, but she has not alleged that they were individually liable for an interference with her PFMLA benefits.

To be held individually liable under the FMLA, the individual must of "had supervisory authority over the plaintiff and was partly responsible for the alleged violation." <u>Boadi v. Ctr. for Human Dev., Inc.</u>, 239 F. Supp. 3d 333, 349 (D. Mass. 2017). The FMLA requires a "fact-specific" analysis to determine "whether an individual supervisor can be considered an 'employer[,]'" which focuses on "whether the supervisor exercised sufficient control over the employee." <u>Chacon v. Brigham & Women's Hosp.</u>, 99 F. Supp. 3d 207, 213 n.5 (D. Mass. 2015) (citing <u>Brunelle v. Cytec Plastics, Inc.</u>, 225 F. Supp. 2d 67, 82 (D. Me. 2002) ("adopting the five-factor test used by the First Circuit in a parallel context in FLSA cases: 'whether an individual actor (1) had the power to hire and fire the employees; (2) supervised and controlled employee work schedules or conditions of employment; (3) determined the rate and method of payment; . . . (4) maintained employment records . . . [and (5)] had personal responsibility for making decisions that contributed to the alleged violation'").

Taking the five-factor test from <u>Brunelle</u>, Plaintiff has not shown that either Defendant Gardner or Defendant Murphy can be considered "employers" under the PFMLA. Plaintiff states in her Complaint that Defendants Murphy and Gardner had "supervisory authority" over her during the course of employment. 225 F. Supp. 2d at 82; [ECF No. 39 ¶¶ 10–11]. Plaintiff does not explicitly state what that supervisory authority entailed, (e.g., either defendant had the authority to hire or fire employees, controlled Plaintiff's or any other employees work schedules or conditions of employment, determined payment amounts or methods, maintained employment records, or were personally responsible for any potential interference with Plaintiff's PFMLA benefits).

The Court finds that the interference claims asserted individually against Defendants Murphy and Gardner must be dismissed, using the standard of individual liability applied under the FMLA, it has not

been alleged that Defendants Murphy and Gardner had any responsibility, whether partial or full, for the alleged violation of interference with the Plaintiff's PFMLA rights. There are no allegations that Murphy or Gardner had authority or responsibility to approve or deny the Plaintiff's entitlement to leave, nor that they received or acted upon notice of her intent to take leave, which was communicated to Local 609's independent investigator. Thus, the motion to dismiss Count IX against Defendants Murphy and Gardner is **GRANTED.**

### C. <u>Common Law Claims</u>

Plaintiff asserts common law claims against Defendants Murphy and Gardner including, assault and battery, and intentional infliction of emotional distress ("IIED"). The Defendants argue that the counts for IIED and assault and battery are barred by the exclusivity provision of the Massachusetts Workers' Compensation Act (the "Act"), Mass. Gen. Laws ch. 152, § 24.2. [ECF No. 41 at 2, 13-16]. "Under that exclusivity provision, the act supplants common-law causes of action for injuries to an employee suffered in the course of employment unless he or she waives any compensation payments under the act at the time of hire." <u>Spagnuolo v. Holzberg</u>, 158 N.E.3d 496, 502 (Mass. App. Ct. 2020) (citing <u>Estate of Moulton v. Puopolo</u>, 5 N.E.3d 908, 915 (Mass. 2014)). Thus, in general, "actions for negligence, recklessness, gross negligence, and willful and wanton misconduct by an employer are precluded by the exclusive remedy provision." <u>Moulton</u>, 5 N.E. 3d at 915. The Massachusetts Supreme Judicial Court has recognized an exception to the exclusivity provision, "holding that it is not applicable when an employee brings 'an action against a fellow employee who commits an *intentional tort* which was in no way within the scope of employment furthering the interests of the employer.'" <u>Spagnuolo</u>, 158 N.E.3d at 501-02 (emphasis added) (citing <u>O'Connell v. Chasdi</u>, 511 N.E.2d 349, 352 (Mass. 1987)). Because the intentional torts of IIED and assault and battery, are "'not remotely related to the employer's interests,' <u>O'Connell</u> 511 N.E.2d at 351 n.5, an employee who is subjected to intentional infliction of emotional

distress stemming from sexual harassment by a co-employee is not barred by the [a]ct from suing that individual." Spagnuolo, 158 N.E.3d at 502 (quoting Morehouse v. Berkshire Gas Co., 989 F. Supp. 54, 65 (D. Mass. 1997). Therefore, these common law claims are not barred by the Act.

### a) Count V: Assault and Battery against Gardner

Count V alleges assault and battery against Defendant Gardner.[4] The alleged assault and battery occurred when Plaintiff and Defendant Gardner were the only two individuals in Local 609's office building. [ECF No. 39 ¶ 13]. Plaintiff asserts that Defendant Gardner approached her in the office kitchen wearing only a bath towel across his waist. [Id. ¶ 14]. Plaintiff then raised her hands to block her face and asked Defendant Gardner to put clothes on. [Id. ¶ 15]. Defendant Gardner released the towel, exposing himself to Plaintiff, who exited the kitchen to her office. [Id. ¶¶ 15–16]. Additionally, Plaintiff asserts that this incident was the culmination of Defendant Gardner's "increasing unwelcome conduct towards [Plaintiff]," because Defendant Gardner had been approaching Plaintiff "wearing fewer and fewer articles of clothing that are inappropriate for an office environment." [Id. ¶ 19].

### i) Assault

The intentional tort of civil assault is defined as "an act done with the intention of causing 'a harmful or offensive contact with the person of the other . . . , or an imminent apprehension of such a contact [if] . . . the other is thereby put in such imminent apprehension.'" Guzman v. Pring-Wilson, 963 N.E.2d 1196, 1199 (Mass. App. Ct. 2012) (alterations in original) (quoting Restatement (Second) of Torts § 21(1)). "[A]n assault may be accomplished in one of two ways—either by an attempted battery, or by putting another in fear of an immediately threatened battery[.]" Id. (quoting Commonwealth v. Gorassi,

---

[4] Plaintiff labeled this claim "assault and battery," despite using the term assault to describe the alleged incident. [ECF No. 39 at 12-13]. Assault and battery are separate torts, and the Court shall address their merit independently. Restatement (Second) of Torts §§ 13, 21 (1965).

733 N.E.2d 106 (Mass. 2000)). Here, Plaintiff has not asserted which theory of assault her claim falls under, simply stating that she was "in immediate apprehension of an offensive physical contact by an overt gesture[.]" [ECF No. 39 ¶ 90]. Attempted battery requires a plaintiff to prove that the defendant intended harmful or offensive contact and took some "overt step toward accomplishing that contact." Arias v. McAdam, No.11-11151-JLT, 2021 U.S. Dist. LEXIS 148104, *4 (D. Mass. June 14, 2012) (quoting Commonwealth v. Arias, 939 N.E.2d 1169, 1174 (Mass. App. Ct. 2010); Commonwealth v. Melton, 763 N.E.2d 1092, 1096 (Mass. 2002)). Threatened battery requires a plaintiff to prove that the defendant "engaged in 'objectively menacing' conduct with the intent to cause apprehension of imminent physical harm." McEntee v. Beth Israel Lahey Health, Inc., 685 F. Supp. 3d 43, 48 (2023) (quoting Gorassi, 733 N.E.2d at110. Additionally, the plaintiff's apprehension of imminent physical harm must be reasonable. See Restatement (Second) of Torts §31 (1965) ("Words do not make the actor liable for assault unless together with other acts or circumstances they put the other in reasonable apprehension of an imminent harmful or offensive contact with his person.").

A defendant is liable for the intentional tort of battery if "'[a] he acts intending to cause a harmful or offensive contact with the person of the other . . . or an imminent apprehension of such a contact, and [b] a harmful contact with the person of the other . . . results[.]'" Waters v. Blackshear, 591 N.E.2d 184, 185 (Mass. 1992) (quoting Restatement (Second) of Torts § 13). Further, the defendant's act "must cause, and must be intended to cause, an unpermitted contact." Id. (quoting W.L. PROSSER & W.P. KEETON TORTS, § 9, at 41 (5th ed. 1984)). Imminent apprehension requires that the plaintiff be aware of the attempt at bodily contact, such that the "act may none the less cause illness or some other form of bodily harm through the shock to which the other is subjected by [her] subsequent discovery of the peril in which [she] had been put by the actor's contact." Restatement (Second) of Torts, § 22.

The Defendants assert that Plaintiff fails to establish a claim for assault because she makes no claim that Gardner touched her, attempted to touch her, or made any actions that would reasonably lead her to believe she would be touched with the intent to do so. [ECF No. 41 at 17–18]. Plaintiff counters that Defendant Gardner's approach, wearing only a towel while they were alone in the office, and his subsequent act of dropping the towel and exposing himself placed Plaintiff in immediate apprehension of an offensive physical contact by Defendant Gardner. [ECF No. 43 at 6].

The Court finds that Plaintiff's assault claim survives under both the attempted and threatened battery theories. Grajales, 682 F.3d at 44 (finding that at a motion to dismiss stage, the Court must "accept the truth of all well-pleaded facts and draw all reasonable inferences therefrom in the pleader's favor.").

The apprehension required for the tort of assault is "that which would put a reasonable person in fear of impending harmful contact." Benson v. Norwood Dodge Sales, Inc., No. 0000049, 2000 Mass. Super. LEXIS 613, at *11 (Mass. Super. Ct. Aug. 10, 2000). "Mere words are not sufficient . . . some overt act however insubstantial, is required." Id. Further, "a defendant need not 'be able instantly to carry out the physical violence threatened by his conduct,'" instead, "'[i]t is enough that one is so close to striking distance that he can reach [plaintiff] almost at once.'" Kennedy v. Town of Billerica, 617 F.3d 520, 539 (1st Cir. 2010) (quoting Ginsberg v. Blacker, 852 N.E.2d 679, 684 n.8 (Mass. App. Ct. 2006)).

Under the attempted battery theory, Plaintiff's allegations meet the elements required to survive a motion to dismiss because they include specific conduct that may reasonably be interpreted as both intentional and overt. To plead attempted battery, a plaintiff must allege that "the defendant intended to commit a battery, took some overt step toward accomplishing that intended battery, and came reasonably close to doing so." Melton, 763 N.E.2d at 1096. Plaintiff alleges that Defendant Gardner approached her while wearing only a towel and did so while they were alone in the office kitchen, circumstances under which such conduct could be reasonably perceived as unexpected and threatening. [ECF No. 39 ¶¶ 14–

15]. Under these circumstances, Defendant Gardner's conduct permits a reasonable inference that he intended to make harmful or offensive contact, as his lack of clothing would serve no legitimate purpose in the office kitchen. The subsequent removal of the towel further supports the inference that Defendant Gardner took an overt step toward harmful contact. [Id. ¶ 15]. Moreover, Plaintiff asserts that she immediately returned to her office, suggesting that the interaction had progressed to a point where she felt compelled to leave the kitchen to avoid harmful contact. [Id. ¶ 16]. Taken together, these allegations support an inference that Defendant Gardner acted with the requisite intent, engaged in overt conduct in furtherance of an assault, and came reasonably close to its completion.

Plaintiff also alleges facts that satisfy the legal elements of assault under the threatened battery theory, which requires "conduct that a reasonable person would recognize to be threatening," an intent "to place the victim in fear of an imminent battery," and that the "victim perceived the threat." Commonwealth v. Porro, 939 N.E.2d 1157, 1163 (Mass. 2010).[5] Here, approaching Plaintiff while clothed only in a towel and then removing it, can reasonably be interpreted as threatening when considered in the context of their professional relationship and that the alleged conduct took place in the kitchen of the office building where Plaintiff and Defendant Gardner were the sole individuals. [ECF No. 39 ¶¶ 13–15]. The removal of the towel, rather than mere verbal communication, constitutes the "overt act" required to elevate the conduct to assault. Benson, 2000 Mass. Super. LEXIS 613, at *11. Plaintiff alleges that Defendant Gardner approached her "in a corner of the office kitchen[,]" which would place Gardner in "striking distance," Kennedy, 617 F.3d at 539, where a reasonable person to fear that an offensive contact might occur immediately. [ECF No. 39 ¶ 14]. Plaintiff's reaction, retreating to her office and texting Defendant

---

[5] The Court notes that, due to a lack of caselaw articulating the elements for civil liability under a threatened battery theory, the elements articulated in Porro refer to criminal liability under a common law threatened battery theory. 939 N.E.2d at 1163. The Defendants are not prejudiced by use of this standard as it presents a heightened burden for Plaintiff at the motion to dismiss stage – one that she is able to meet for reasons discussed infra.

Murphy about what had occurred, indicates that she in fact perceived the threat, further satisfying the final element. [Id. 39 ¶ 17]. These allegations, viewed in the light most favorable to Plaintiff as required at this stage, are sufficient to state a plausible claim of assault under the threatened battery theory. Thus, Defendants' motion to dismiss Claim V related to the assault claim is **DENIED.**

    **ii)**    **Battery**

Regarding the battery claim, Defendants argue that Plaintiff's claim fails because she does not allege any contact between herself and Gardner. [ECF No. 41 at 16]. Defendants also assert that Plaintiff does not claim that Defendant Gardner attempted to physically touch Plaintiff or that he acted with the intent to create fear of imminent offensive contact. [Id.] The Court finds that Plaintiff's battery claim must be dismissed, as a claim for battery requires that a defendant's actions "'must cause, and must be intended to cause, an unpermitted contact[,]'" and the Plaintiff has not alleged that any contact occurred between herself and Defendant Gardner. Waters, 591 N.E.2d at 185 (quoting W.L. PROSSER & W.P. KEETON TORTS, § 9, at 41 (5th ed. 1984)). Thus, because Plaintiff has not shown unpermitted contact by Defendant Gardner, Defendants' motion to dismiss the battery claim will be **GRANTED**.

Thus, Defendants' motion to dismiss Claim V, assault and battery, is **DENIED IN PART**, and **GRANTED IN PART**.


    **b)**  **Count VI: Intentional Infliction of Emotional Distress against Murphy and Gardner**

To make out a claim of IIED, the plaintiff must show that "(1) the [defendant] intended, knew, or should have known that his conduct would cause emotional distress;  (2) that the conduct was extreme and outrageous; (3) that the conduct caused emotional distress; and (4) that the emotional distress [sustained by the plaintiff] was severe." Polay v. McMahon, 10 N.E. 3d 1122, 1128 (Mass. 2014) (citing Howell v. Enter. Publ'g Co., LLC, 920 N.E. 2d 1, 28 (Mass. 2010)); see also Restatement (Second) of

Torts §46 cmts. d & j (1965). "The standard for making a claim of intentional infliction of emotional distress is very high." Polay 10 N.E. at 1128 (quoting Doyle v. Hasbro, Inc., 103 F.3d 186, 195 (1st Cir. 1996)). "'Outrageous' in [the IIED] context means 'a high order of reckless ruthlessness or deliberate malevolence that . . . is simply intolerable.'" Coucelos v. City of Woburn, No. 23-12063-GAO, 2024 U.S. Dist. LEXIS 175744, at *45 (D. Mass. June 18, 2024) (quoting Conway v. Smerling, 635 N.E. 2d 268, 273 (Mass. App. Ct. 1994). "There is an issue for the jury if reasonable people could differ on whether the conduct is 'extreme and outrageous.'" Boyle v. Wenk, 392 N.E.2d 1053, 1056-57 (Mass. 1979) (quoting Agis v. Howard Johnson Co., 355 N.E.2d 315, 318 (Mass. 1976). Ms. Tardiff  must also show that the Defendants acted "without privilege." Agis 355 N.E.2d 315at 318. The Defendants may be subject to liability for such emotional distress "even though no bodily harm may result." Id.

Ms. Tardiff asserts that Defendants Gardner and Murphy are liable for IIED due to pervasive sexual harassment, the assault on May 19, and Mr. Murphy's conduct in the office with illegal firearms. Ms. Tardiff alleges that during her course of employment, Murphy "repeatedly attempted to intimidate" her by sending photos of his face covered with a gun; "displaying a gun on his desk facing her," while they were together in his office; and by "repeatedly referencing his illegal possession of guns in the workplace." [ECF No. 39 ¶ 48].

Taking these undisputed facts as true, which the Court must at this stage, it is evident that Plaintiff has met the high threshold for an IIED claim. Bringing an unregistered firearm into a workplace, having it on display, and directing this firearm at an employee in a meeting is not only reckless, but outrageous conduct for a superior in an office setting. Defendants have provided no evidence or argument to support that the messages allegedly sent from Mr. Murphy to Ms. Tardiff displaying guns was related to the scope of their employment. The repeated nature of this conduct shows its intentionality.

Mr. Gardner's actions can be viewed similarly, Ms. Tardiff and Gardner were the only two people in the office, he entered a shared common area in his workplace naked wearing only a towel. After Ms. Tardiff asked Gardner to put clothes on, he then dropped the towel exposing his erection, while blocking Ms. Tardiff's exit to the room. [Id. ¶¶ 13–16]. The facts provided in combination with allegations of regular inappropriate interactions are sufficient to assume that the Defendant acted with intention. [Id. ¶19]. Plaintiff plausibly asserts that the conduct of these actors led to severe anxiety and emotional distress. This is demonstrated by Plaintiff's assertions of shock and fear, her request to not work alone in the office with Gardner after May 19, 2021, and the need to leave her long-term workplace indefinitely during the investigation and thereafter. [Id. ¶¶ 16, 21, 40, 47].

The Defense has made no persuasive argument that the incident of May 19, nor the images of Murphy holding a firearm, nor the display of a firearm in an office setting, pointed toward a subordinate, aligned with Gardner or Murphy's scope of employment to further the interests of Local 609, nor have they asserted any privileges that would bar this action. Therefore, the Motion to Dismiss as to Gardner and Murphy in Count VI are **DENIED.**

I. **CONCLUSION**

For reasons set forth above, Defendants' motion is **GRANTED IN PART** and **DENIED IN PART.**

| I | Sexual Harassment under M.G.L. c. 151B | <ul><li>DENIED as to Defendant Local 609.</li><li>DENIED as to Defendant Murphy.</li><li>DENIED as to Defendant Gardner.</li></ul> |
|---|---|---|
| II | Sexual Harassment under Title VII | <ul><li>DENIED as to Defendant Local 609.</li></ul> |
| III | Retaliation under M.G.L. c. 151B | <ul><li>DENIED as to Defendant Local 609.</li><li>GRANTED as to Defendant Murphy.</li><li>GRANTED as to Defendant Gardner.</li></ul> |
| IV | Retaliation under Title VII | <ul><li>DENIED as to Defendant Local 609.</li></ul> |
| V | Assault and Battery | <ul><li>DENIED IN PART AND GRANTED IN PART as to Defendant Gardner.</li></ul> |

| | | |
|---|---|---|
| VI | Intentional Infliction of Emotional Distress | • <u>DENIED</u> as Defendant Murphy.<br>• <u>DENIED</u> as to Defendant Gardner. |
| VII | Gender Discrimination under M.G.L. c. 151B | • <u>DENIED</u> as to Defendant Local 609.<br>• <u>DENIED</u> as to Defendant Murphy.<br>• <u>DENIED</u> as to Defendant Gardner. |
| VIII | Gender Discrimination under Title VII | • <u>DENIED</u> as to Defendant Local 609. |
| IX | Interference with Plaintiff's rights under the Massachusetts Paid Family Medical Leave Act | • <u>GRANTED</u> as to Defendant Local 609.<br>• <u>GRANTED</u> as to Defendant Murphy.<br>• <u>GRANTED</u> as to Defendant Gardner. |

**SO ORDERED.**

Dated: August 15, 2025

           /s/ Margaret R. Guzman
          Margaret R. Guzman
          United States District Judge